## Thomas M. Bunting v. Michael C. Speek *et al.*

1. CONTINGENT REMAINDER; *Plain Intent to Create.* In a devise to a wife for life, with remainder to the legal heirs of the testator, to create a contingent remainder the intent so to do must be expressed in words so plain that there is no room for construction.

2. ———— *Vested Remainder.* No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested.

3. FACTS STATED—*Vested Remainder Shown.* In a devise by B. a life estate was given to his wife in all his property, real and personal, "to have and to hold them, together with all rights and privileges thereunto belonging, during her lifetime, and then they are to descend to my legal heirs;" and at the death of B. he left surviving him two married sons, one of whom had not been heard from for more than three years; the life tenant had possession of all the property for more than six years, and then she and the son that remained at home conveyed their interest in the real property to the grantor of the defendants in error, who have had exclusive possession for twenty years before the commencement of this action; the absent son never having been heard from. *Held,* That the heirs took a vested remainder in fee at the death of the testator; and in an action by a grandson of the testator to recover the possession of the real property so devised, as the sole surviving heir of the testator, he could not recover, as the interest of his father passed by the conveyance he made in his lifetime to the grantors of the defendants in error.

*Error from Doniphan District Court.*

EJECTMENT, by *Bunting* against *Speek* and wife. Judgment for defendants, at the October term, 1886. The plaintiff brings the case to this court. The opinion states the material facts.

*David Rea, Joseph Rea,* and *F. Babcock,* for plaintiff in error.

*Albert Perry,* for defendants in error.

Opinion by SIMPSON, C.: This action was commenced by the plaintiff in error in the distritc court of Doniphan county, on the 9th day of February, 1886. It is an action in ejectment to recover the possession of eighty acres of land, and to

recover rents and profits. The plaintiff below and plaintiff in error is a grandson of one Michael Bunting, who by will devised his estate, real and personal, to his wife during her lifetime, and then to descend to his legal heirs. The father of the plaintiff in error died before the death of the grandmother, and at her death he claimed the estate as sole surviving heir. The defendant in error claims the realty by virtue of conveyances from the grandmother and father of the plaintiff in error executed in their lifetime. The defendant in error has had the possession and use of the real property since the execution of the conveyances in October, 1868. The answer is a general denial, and a plea of the statutes of limitations. There was a trial by the court at the October term, 1886.

All the material facts are stated in the special findings of fact made by the court on the trial. They are as follows:

"1. Michael Bunting died in said county and state, January 9, 1862, seized in fee simple of the following-described land, to wit: north half of northeast quarter of section 9, township 3, range 20, being the land in controversy.

"2. At his death he resided with his family upon said land.

"3. Michael Bunting at his death left surviving him his widow, Nancy Bunting, and his son, Jacob L. Bunting, who was the only child of said Michael Bunting known to be living at his death.

"4. Michael Bunting had one other child, Daniel Bunting, born to him in his lifetime, but said son Daniel Bunting left Elwood, Kansas, with his wife, in 1857 or 1858, going off in a flat-boat on the Missouri river, and himself and wife were never heard from thereafter, and he left no children, and so far as the evidence shows, none were born to him.

"5. Nancy Bunting, widow of Michael Bunting, died April 27, 1885.

"6. Jacob L. Bunting died March 5, 1870, his widow, Sarah E. Bunting, and his only child, Thomas M. Bunting, the plaintiff in the case, surviving him.

"7. Sarah E. Bunting, widow of Jacob L. Bunting, after her husband's death married Isaac Erickson, and said Erickson and one child by said marriage are now living.

"8. Sarah E. Erickson, former wife of Jacob L. Bunting, died January 26, 1880.

"9. Michael Bunting made a will on the 5th day of October, 1861, which was thereafter admitted to probate, and recorded in the office of the probate court of Doniphan county, Kansas, and letters testamentary with a copy of the will and certificate thereof, issued to Hugh Robertson, executor therein, on March 5, 1862.

"10. The said will and letters testamentary are in words and figures as follows, to wit:

"'The Territory of Kansas, County of Doniphan, ss.— *To all Persons to whom these Presents shall come, Greeting:* Know ye, that the last will and testament of Michael Bunting, deceased, hath in due form of law been exhibited, proven and recorded in the office of the judge of the probate court for Doniphan county, a copy of which is hereunto annexed; and inasmuch as it appears that Hugh Robertson has been appointed executor in and by the last will and testament to execute the same, and to the end that the property of the testator may be preserved for those who shall appear to have a legal right or interest therein, and that the said last will may be executed according to the request of the testator, we do hereby authorize him, the said Hugh Robertson, as such executor, to collect and secure all and singular the goods, chattels, rights and credits which were of the said Michael Bunting at the time of his death in whosesoever hands or possession the same may be found, and to perform and fulfill all such duties as may be enjoined upon him by said will, so far as there shall be property, and in general to do and perform all other acts which are now or hereafter may be required of him by law.

"'In testimony whereof, I, James B. Maynard, judge of the probate court in and for said county of Doniphan, have hereunto signed my name and affixed the seal of said court, this fifth day of March, 1862.

JAMES B. MAYNARD, *Judge of Probate.*

"'THE LAST WILL AND TESTAMENT OF MICHAEL BUNTING, OF THE COUNTY OF DONIPHAN AND STATE OF KANSAS.

"'I, Michael Bunting, considering the uncertainty of this mortal life, and being of sound mind and memory, do make and publish this my last will and testament in manner and form following, that is to say:

"'*First.* I give and bequeath to my son Jacob Bunting the sum of ten dollars.

"'*Second.* I will and bequeath to my beloved wife, Nancy Bunting, after all my just debts and liabilities are paid, all the rest of my estate, real and personal, to have and to hold them, together with all rights and privileges thereto belonging, during her lifetime, and then they are to descend to my legal heirs.

"'*Third.* I do hereby appoint Hugh Robertson, of the county and state aforesaid, executor of this my last will and testament, hereby revoking all former wills by me made.

"'In witness whereof, I have set my hand and seal, the fifth day of October, in the year of our Lord one thousand eight hundred and sixty-one. MICHAEL BUNTING.

Attest: HUGH ROBERTSON, JAMES MATTERSON WARLEY, MARY JANE WARLEY.

"'I, James B. Maynard, judge of the probate court within and for Doniphan county, state aforesaid, do certify that the above and foregoing to be a true copy of the will of Michael Bunting, deceased, placed on file in my office.

"'Witness my hand and seal of court, affixed at office in Troy, this fifth day of March, 1862. JAMES B. MAYNARD, *Judge of Probate.*'

"Hugh Robertson thereafter acted as executor of said estate.

"11. On August 13, 1868, Nancy Bunting executed a quitclaim deed of said above-described land to John D. Paden, which deed was on the same day filed for record and recorded in the office of the register of deeds of Doniphan county.

"12. On August 13, 1868, Jacob L. Bunting and Sarah E. Bunting his wife also executed a quitclaim deed of said land to John D. Paden, which deed was duly filed for record and recorded in the office of the register of deeds of Doniphan county, Kansas, August 21, 1868.

"13. In both of said deeds last described the conveyance is of the whole of said lands described in finding No. 1.

"14. On October 27, 1868, John D. Paden and wife conveyed said land to Michael C. Speek, the defendant, who has ever since been in possession thereof; said deed was filed for record and recorded in the office of the register of deeds for Doniphan county on October 27, 1868, the consideration thereof being five hundred dollars.

"15. It does not appear from the evidence that Nancy Bunting, widow of Michael Bunting, ever elected to take under the will.

"16. The rental value of the premises in dispute is the sum of two dollars per acre for forty-five acres of cultivated land, to be calculated from and after the 25th day of April, 1885."

"CONCLUSION OF LAW.

"Thomas M. Bunting, the plaintiff, has no interest in the land in controversy, and the defendants, Michael C. Speek and Ellen Speek, are entitled to a judgment for costs."

It is claimed by the plaintiff in error that the will of Michael Bunting created a life estate in favor of his wife, Nancy Bunting, and a contingent remainder in favor of his heirs. About the creation of the life estate there was not nor can there be any controversy. The controlling question is whether the remainder is a vested or a contingent one. We have given this question very earnest consideration, because it is an open one in this court, and the decision of it establishes to a certain extent a rule of property not heretofore determined in this state.

Blackstone defines "an estate in remainder" to be "an estate limited to take effect and be enjoyed after another estate is determined." To create an estate in remainder, the owner of the fee must first carve out of the fee an estate for life, or for years, as a supporting or precedent estate to the estate in remainder. This is called the particular estate, for the reason that it is only a small part or particle of the inheritance. The

necessity for the creation of the particular estate arises from the fact that "remainder" is a relative expression, and implies that some portion of the estate is previously disposed of, for where the whole is granted there cannot possibly exist a remainder. The particular estate for life, and the remainder in fee, are only parts of one and the same estate, upon a principle grounded in mathematical truth, that all the parts are no more than equal to the whole. This particular estate and the estate in remainder must be created at the same time, and by the same conveyance; for, as the estate in remainder must have a particular estate to support it, and as the particular estate and the remainder constitute the whole estate, it follows that the remainder must commence, or must pass out of the grantor, at the time of the creation of the particular estate, and must vest in the remainderman during the continuance of the particular estate.

Remainders are either vested or contingent. A vested remainder, whereby the estate passes by the conveyance, but the possession and enjoyment are postponed until the particular estate is determined, is where the estate is invariably fixed to remain to certain determinate persons: as, if A be a tenant for twenty years, remainder to B in fee; here B's is a vested remainder, which nothing can defeat or set aside. The particular estate is sure to be spent at the expiration of twenty years. The event upon which the remainder to B is limited, having occurred, the use, possession and enjoyment by B commences by reason of his title in fee, and the termination of the particular estate, and at its determination there is no doubt about B's right to the possession. Contingent remainders are where the estate in remainder is limited to take effect either to a dubious or uncertain person, or upon a dubious and uncertain event; so that the particular estate may be determined and the remainder never take effect. As, if A be a tenant for life, with remainder to B's eldest son, then unborn; it is uncertain whether B will have a son or not; if A dies before a son is born to B, there is no person *in esse* to take the estate, and the remainder is absolutely gone; if B has a son born

before A's death, the instant the son is born the remainder is no longer contingent, but vests in the son.

These definitions and examples are extracted from Blackstone, Kent, Washburn on Real Property, Williams on Real Property, and other text-writers who have "raked in the ashes of the antiquated cases," critically sifted, ably digested, and reduced them to an expression easily understood and most generally adopted. It is the present capacity of taking effect of possession, if the possession would become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. This is the test by which the two estates must be distinguished, as laid down in Kent, as announced in Fearne, and as approved by the great weight of modern authority in this country. Now this line of distinction between vested and contingent remainders is nicely drawn, and difficult to trace, and has always been warped by the struggles of the courts for a construction which tends to support the remainder by giving it a vested character, and to guard it against efforts to defeat it by the particular tenant. Our task is not only to so construe this last testament as will give effect to the intentions of the testator, but as the construction we do adopt will to some extent be relied upon as a rule of property in this state, we must make this line of distinction between these two classes of remainders as easy of comprehension, and as just and equitable in its operations, as we are capable of. To give as clear an idea as possible of this distinction, we venture to express it in different language, and produce a few examples tending, as we trust, to illustrate its operation when applied to cases of this character. If it is clear that certain persons then living have a right to take possession of the property at the determination of the life estate, or at any time when it becomes vacant, then the remainder is a vested one. As, if A by will devised his real property to B his wife for and during her natural life, and at her death to his legal heirs, and at the death of A he had two sons surviving him, and these two sons were living at the time of the death of B; here are two certain, determinate persons to take

possession. In this example both the contingency upon which the possession depended, and the persons who had the capacity to make the will effectual by their right of possession, were fixed, definite, and certain.

In the case of *Smith v. West*, 103 Ill. 332, there is a very lucid statement of the characteristics of a vested remainder. The court says:

"When a conveyance of the particular estate is made to support a remainder, the tenant for the particular estate takes it, and if the remainderman is in being, he takes the fee. In such a case the remainder is not contingent as to its becoming a vested remainder, because the title vests in the remainderman on the delivery of the deed. The title thus vested becomes an estate of inheritance, and in case the remainderman dies before the particular estate is expended, the title passes to his heirs, unless the deed otherwise directs."

In *Blanchard v. Blanchard*, 1 Allen, 227, it is said:

"Where a remainder is limited to take effect in possession, if ever, immediately on the determination of the particular estate, which estate is to determine by an event *that must unavoidably happen by the efflux of time*, the remainder vests in interest as soon as the remainderman is *in esse*, and ascertained, provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession. Yet, if the estate is limited over to another in the event of the death of the remainderman before the determination of the particular estate, his vested estate will be subject to be divested by that event; and the interest of the substituted remainderman, which was before either an executory devise or a contingent remainder, will, if he is *in esse*, and ascertained, be immediately converted into a vested remainder."

This case is a very fair illustration of the difference between a contingent and a vested remainder. The case was thus, (using the names of persons in this controversy:) Michael Bunting devised all his property, real and personal, to his wife Nancy, during her natural life, with remainder to his son Jacob, and in case Jacob should die before Nancy, the remainder to his son Daniel. At the death of the testator, Michael Bunting, Nancy, Jacob and Daniel all being alive,

Nancy took an estate for life, Jacob took a vested remainder, and Daniel was a contingent remainderman. Jacob was a certain determinate person who had the right to the possession the moment Nancy died, or the particular estate was otherwise determined. The right of Jacob to take effect in possession, depended upon an event that must unavoidably happen by the efflux of time, to wit, the death of Nancy. Here both the distinguishing features of a vested remainder exist — certainty as to the person who has the right of possession, and certainty as to the event upon the happening of which he could take possession. So that nothing but the death of Jacob before that of Nancy would prevent the remainder from vesting in possession. Now Daniel's right to take possession depends upon the death of Jacob before that of Nancy, and the death of Nancy in his own lifetime. If Jacob dies before Nancy, then Daniel is the certain and definite person in whom vests the right to take possession the moment Nancy dies, and his interest, that before the death of Jacob was a contingent remainder, at the death of his brother is immediately converted into a vested remainder.

In *Hawley v. James*, 5 Paige, 466, Chancellor Walworth says:

"A remainder is vested in interest where the person is in being and ascertained, who will, if he lives, have an absolute and immediate right to the possession of the land upon the ceasing or failure of all the precedent estates."

In *Moore v. Littel*, 41 N. Y. 72, it is said:

"Decisions and text-writers agree that by the common law a remainder is vested where there is a person in being who has a present capacity to take in remainder, if the particular estate be then presently determined, otherwise the remainder is contingent."

In all these cases and in the text-books, it is always said that before the remainder is vested, "the person must be ascertained;" "the person must be certain and determinate;" and these expressions mean that the person must be one to whose competency to take, no further or other condition at-

taches; one in respect to whom it is not necessary that any event shall occur, or condition be satisfied, save only that the precedent estate shall determine.

We shall adopt Blackstone's classification and definitions of estates in remainder, both vested and contingent. They are approved by Kent; are more easily understood than those of other text-writers; and better suited to the condition of real property in this state. We shall not allow ourselves to be controlled by the rules established in adjudicated cases, when such rules are difficult of application, and are unharmonious with the general policy of our statutes concerning real property, but shall endeavor to establish some general rule consistent with that policy.

We must now depart from the natural order of this opinion, to point out how the question we are considering has been influenced by the tendency of legislation, and the leaning of the courts, by reason of the demands of public policy and other considerations that have entered into this discussion. The tendency of all modern legislation is against contingent remainders, and this too seems to be the drift of judicial construction. It is said that to have the fee in a state of abeyance, a condition that often occurs in contingent remainders, is always odious. This legislative and judicial current can be attributed to a variety of causes. One of the most influential reasons for the drift is inherent in the subject, for while a remainder, in its original simplicity, would appear to be easy and practical in its application and operation, yet the collateral refinements and complex questions that have grown out of it from time to time cause the inquiry to involve critical discussions upon the most abstruse, subtle, and artificial distinctions in the law. To such an extent had this excessive refinement been carried, that Chancellor Kent said "that the English law of real property has, in the lapse of ages, become incumbered with much technical and abstruse refinement, which destroys its simplicity and good sense, and renders it almost impossible for ordinary minds to obtain the mastery of the science." Lord Chancellor Cowper said that it had "no foundation in

natural reason, but is raised and supported purely by the artificial reasoning of lawyers."

Let the modern lawyer undertake to read and comprehend the classification of contingent remainders in the treatise of Fearne, or Preston's observations on the rule in *Shelley's Case*, until he becomes inextricably tangled in "wild involutions," and then the drift toward a less refined and a more easily comprehended law of real property will be appreciated. The reactionary feeling against the web of perplexing refinement arose in the place of its growth and development, and resulted in the statute of 7 and 8 Vict. C. 76, in 1844, "for simplifying the assurance of property by deed." By this statute, contingent remainders are abolished, and it is provided that every estate, that would have taken effect as such, shall take effect, if in a will, as an executory devise; and if in a deed, as an executory estate or limitation of the same nature as an executory devise. By the act of parliament of 1845, ch. 106, so much of the act of 7 and 8, Vict. C. 76, as abolished contingent remainders retrospectively, was repealed, and this latter act allowed "contingent interests" to be disposed of by deed, but not to defeat or enlarge an estate. So that in all conveyances either by will or deed, made after the statute of 7 and 8 Vict., contingent remainders were not created.

In this country the legislation has not been so radical, notwithstanding the existence of numerous and important reasons for it. The aversion of the law to the inheritance being in abeyance; the desire that the alienation of estates should be facilitated; the stability of the title; and the benefit of creditors, are inducements in addition to the complicated condition of the subject to such legislative action as will render the construction of a will or conveyance easy of comprehension to the ordinary mind.

The statutes of New York define an estate in remainder as follows: "When a future estate is dependent upon a precedent estate, it may be termed a remainder, and may be created and transferred by that name." These statutes also allow "a future estate which needs no particular estate to support it; and

28 — 41 KAS.

where it is limited on a prior estate, it need not rest immediately upon the determination of the prior estate."

Of course this legislation practically destroys remainders, properly so called. It looks a little as if such changes were "like jumping out of the frying-pan into the fire." The complications arising under such enactments may be fairly sampled by the case of *Hennessy v. Patterson*, 85 N. Y. 91.

At common law, before the contingency happened, contingent remainders could not be conveyed, except by way of estoppel; yet they were assignable in equity, since theoretically such a remainder was not an estate, but a mere chance of having one. Under the statutes in various states, if the person who is to take the estate is ascertained, he has what is called a vested interest in a contingent remainder, which may be alienated by deed. When the person is ascertained who is to take the remainder when it becomes vested, and he dies, it will pass to his heirs, or may be devised by him. It might always have been released by him to the reversioner. In the case of *Putman v. Story*, 132 Mass. 205, it is held, that where there was a remainder to heirs, though contingent, it was assignable, it appearing that there were children living at the time. An attempted conveyance by deed will pass the estate by estoppel when it vests. (*Robertson v. Wilson*, 38 N. H. 48.) When, however, the contingency is not in reference to the person who is to take, but to the event upon which he is to take, the remainderman may grant his interest, and the grantee will take subject to the contingency. (*Kenyon v. Lee*, 94 N. Y. 563.)

In *Drake v. Brown*, 68 Pa. St. 223, Agnew, J., says:

"It is immaterial whether his interest in the property was vested, or contingent; it was liable for his debts." (See also *White v. McPheeters*, 75 Mo. 286.) "It may pass to the assignee in insolvency." (*Belcher v. Burnett*, 126 Mass. 230.) "Such a remainder descends." (*Chess Appeal*, 87 Pa. St. 362; *Buck v. Lantz*, 49 Md. 439.)

In New York, Michigan, Minnesota, and Wisconsin, expectant estates are descendible, devisable and alienable, in the

same manner as estates in possession.   In the states of Massachusetts and Maine, when any contingent remainder is so limited to any person that is case of his death the estate would descend to his heirs in fee simple, such person may, before the happening of the contingency, sell, assign or devise the premises, subject to the contingency.   Where lands are held by one person for life, and with a vested remainder in tail to another, the tenant and remainderman may together convey the same in fee simple.   In Alabama no estate in lands can be created by way of a contingent remainder, but every estate created by will or deed, which might have taken effect as a contingent remainder or executory devise, has the properties and effect as the latter estate.

The rule in *Shelley's Case*, which was a part of the common law, has been repealed or altered by all the states except in Maryland, Georgia, Texas, Indiana, and Pennsylvania.   In this state, however, it affects wills only.   We quote enough only to show the trend of legislation.   Judicial construction has been doing its work in this direction, but the line on which this warfare has been carried on has been principally against contingent remainders, on the ground that they violate the rule against perpetuities, and that, like executory devises, they must be so limited as to take effect, if at all, within a life or lives in being, and twenty-one years and a fraction after.   In Massachusetts the courts have applied the rule against perpetuities to contingent remainders, without question. (*Lovering v. Lovering*, 129 Mass. 97; *Hill v. Simmons*, 125 id. 536; *Otis v. McLellan*, 13 Allen, 339.)

In the case of *Heald v. Heald*, 56 Md. 300, it was decided that where A. gave an equitable life estate to C., and a similar estate to his children surviving him, and the remainder absolutely to the issue of such children, it was held that the last limitation was void as violating the rule against perpetuities.

We are now to inquire as to the policy of our own decisions and the legislation of this state with reference to this question. It was said in an early case by Chief Justice Crozier (*Simpson v. Mundee*, 3 Kas. 184):

"Real estate here, unlike in the earlier settled portions of the country, being one of the leading subjects of purchase and sale, it is not only convenient, but good policy, that the regulations concerning its transfer should be clear, simple, compact, and as much as possible free from cumbrous forms and solemnities. In framing the legislation, the law-makers have apparently acted with reference to these considerations, and the result is that a man of ordinary intelligence can readily discover what will secure to him a lien upon or a title to real estate, unless indeed it shall be held that some such indescribable myths as the English vendors' lien constitutes a part of the law of the state. Were it held to be a part of the law, the great majority would not understand it, and but few could. The adoption of it here would work a practical change in the general spirit of the law of the state, and introduce into our legal polity an element of discord which must necessarily complicate our system of real-estate law and work consequences very disastrous."

Scattered all through the reports of this tribunal will be found cases abounding in similar expressions. Our constant effort has been to make the rules of property as plain and comprehensible as possible. And while we have no disposition to abolish contingent remainders by judicial legislation, we are strengthened in our purpose by these previous expressions to hold a remainder a vested one, whenever we can do so without violence to the instrument creating the estate.

We now turn to our statutes, to note in them a like tendency to abolish many of the distinctions and refinements of the common law in relation to real property. One of the most important of the statutory enactments is the repeal of the section contained in the act regulating conveyances, Comp. Laws of 1862, providing that estates may be created to commence at a future day. This provision was in derogation of the common-law rule that is now in force in this state. So that now estates cannot be created to commence in future. By this statute and a section of the act on trusts and powers, that provides "that a conveyance or devise of lands to a trustee whose title is nominal only, and who has no power of disposition or management of such lands, is void as to the trustee, and shall

be a direct conveyance or devise to the beneficiary." Contingent remainders by way of use, have been annihilated, and are now to be considered as strictly legal contingent remainders, and to be governed by legal rules instead of those artificial refinements that were indulged in to elude the premature destruction of the particular estate. When this devise took effect, the rule in *Shelley's Case* was in force in this state; but by revision of 1868, chapter 117, § 52, it was abrogated so far as wills are concerned, and the law declared to be that "when lands are given by will to any person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall be construed to vest an estate for life only, in such part taken, and a remainder in fee simple in his heirs." This section of the statute has no application to the case we are considering, except so far as it may indicate a legislative policy with reference to remainders. If this devise had given the estate for life to Nancy Bunting, and at her death remainder to her heirs, this statute would have furnished a rule of construction, and then the question would have been whether or not the statute did not make all remainders vested ones. Be this as it may, the effect of this statute is now to establish remainders as a part of our law of real property, and we must accept this result, and act accordingly. We cannot refrain from saying, however, that this legislation is not progressive, and in its practical operation in many cases it will change estates in fee into contingent remainders, unless the construction is given to the act that it means vested remainders. It will prevent the alienation of the property during the life estate and the minority of the heirs, while the rule in *Shelley's Case* facilitated exchanges in real property.

There are some rules for guiding the court in determining questions of this kind, that have been so often declared in adjudicated cases, and so strongly emphasized by the text-writers, and are so well settled, as to become imperative in their operation and universal in their application. There is a prevalent disposition by all courts, upon the grounds of general policy, to favor vested rather than contingent remainders; and

consequently, where there arises from the terms of the con-
veyance a grave doubt as to whether the remainder
vested at the death of the devisor, or should re-
main expectant and contingent until the happening of a future
event, the doubt is always resolved in favor of a vested re-
mainder. Indeed, many well-considered cases assert a still
stronger rule in favor of vested remainders, by holding that all
estates in remainder are to be treated as vested, except in a
devise, in which a condition precedent to the vesting is so
clearly expressed that the court cannot treat it as vested with-
out doing so in plain contradiction to the language of the will.
Another rule, so often expressed that we find it everywhere
in the books, but probably included in those already stated, is,
that no remainder will be construed to be contingent, which
may, consistently with the words used, or the in-
tention expressed, be deemed vested. Another
goes to the extent that the intent to make a con-
tingent remainder must be expressed in words so plain that
there is no room for construction. (*Straus v. Rost,* 10 Atl.
Rep. 74.) These rules sufficiently indicate the leaning of the
courts toward vested remainders.

*2. Vested re-
mainder.*

*1. Contingent re-
mainder;
plain intent
to create.*

Now, mindful of the rules established, we shall attempt to
construe this will in accordance with the declared intention of
the testator. About one proposition there can be no doubt,
and that is, that the determination of the particular estate—
the life estate of Nancy Bunting—was fixed upon an event
that was bound to happen in the due course of time, and at
her death the persons who had the capacity of legal heirs of
Michael Bunting, then living, were entitled to the possession.
This will gave a life estate to Nancy Bunting at the time it
went into effect, and created both the life estate and the re-
mainder, and the fee passed to and vested in the legal heirs of
Michael Bunting. At that time, to wit, the death of Michael,
he left surviving him his two sons, Jacob L. and Daniel, in
whom the fee vested. If we are correct in the statement that
at the death of Michael Bunting the fee vested in his sons,
this determines the case. The presumption is, that Daniel

died many years ago, leaving no wife or issue. The fee vested in Jacob L., until his death, in 1870. At any time during his life, had the life estate terminated by the death of Nancy, Jacob L. was the certain, ascertained and determinate person in whom vested the capacity and right to take the possession of the property. When Jacob L. died the fee would have vested in the plaintiff in error, but before Jacob L. died he had conveyed his interest, and if he was a vested remainder-man, his conveyance passed his interest in the estate to his grantee. It would pass subject to the contingency, if Nancy had not conveyed the life estate to the same grantee, but as she did, the purchaser acquired the life estate and the vested remainder both, and thus took the fee. But the contention in this case on the part of the plaintiff in error is, that the fee did not vest at the time of the death of the testator, but was in abeyance until the death of Nancy. This contention is based upon the words in the will, "I give to my wife, Nancy Bunting, all my estate, real and personal, to have and to hold during her lifetime, and then they are to descend to my legal heirs." It is said that the word "then" qualifies the time of the descent, and fixes it at the death of Nancy, and not at the death of the testator — thus causing the remainder to be expectant and contingent on the death of Nancy. Numerous authorities are cited to sustain the claim of the plaintiff in error, and it may now be confessed that the language used is not free from ambiguity, and that the case certainly comes very near the dividing-line between vested and contingent remainders. The expressions employed are such that among the great multiplicity and variety of adjudged cases, some are undoubtedly found which would support either construction. We have read many of them, and will cite a few on both sides of the question, and try to point out the distinguishing line between them. The first case relied upon by the plaintiff in error is that of *Straus v. Rost*, 10 Atl. Rep. 74, decided by the supreme court of Maryland in June, 1887. It involved the construction of the will of George Rost. It gave to his wife Sophia all his property of every kind, so long as she remained a widow,

and if she did not marry again, then during the term of her natural life. If she married again, then immediately on her marriage she would only be entitled to such part of the estate as given her by the laws of Maryland, and the residue of the estate was devised to his children, share and share alike, the issue or descendants of any deceased child to take *per stirpes*, and not *per capita;* but if the widow did not marry again, the estate was devised at her death to the children, to be divided in the same manner as if she had married. The testator died in 1871, and left surviving him four sons and one daughter. The daughter died a few weeks after her father. One of the sons died in August, 1877, leaving the appellee as his only child and heir-at-law. The widow married a second time in April, 1881. Upon this state of facts the question arose whether upon this second marriage of the widow, the appellee took by virtue of the will, the share of property that would have gone to his father in case he had survived that event, or whether this share had vested absolutely in the father at the death of the testator, and therefore became subject to an incumbrance that his father had placed on it in his lifetime. In other words, is the survivorship mentioned in this will to be referred to the death of the testator, or to the second marriage of the widow? The court held that the share of the estate had not vested absolutely in the father on the death of the testator, and was not therefore subject to the incumbrance. The opinion is not positive in its language, and it is only by inference that it can be said to hold that the will created a contingent remainder. But, waiving all this, we are disposed to say in plain terms, that it did create a contingent remainder in favor of the children, because the first event upon which the particular estate determined, was the marriage of the widow. This was a dubious event: it might or might not happen. It is true that the second event, to wit, the death of the life tenant, was sure to happen, but the first event would continue in doubt for a long time. Now, as we have seen, one of the distinguishing characteristics of a contingent remainder is, that it is limited to take effect upon a dubious or

uncertain event. This case then is one in which a contingent remainder would be created, if the words controlling the decision were not used.

We are referred to the discussion of the question involved in the case of *Engle v. The State*, 65 Md. 539, to sustain the decision in *Straus v. Rost*. The Engle case is one in which an action was brought on a testamentary bond to recover certain amounts claimed to be due on the distribution of an estate, by the several accounts settled in the orphans' court. So, to begin on, whatever rule was adopted by the court was to govern the distribution of legacies, and it does not necessarily follow that it is applicable to devises. David Cassell devised certain real estate to his wife for life, with authority to sell the same; one-half of the proceeds to be distributed to the widow, and the other half to be equally divided among all his children, share and share alike, or their share to the children of such as may have died; and gave certain shares of bank stock to his wife for life; and after her death the same to be divided in like manner. Cassell died in 1861; his wife in November, 1875. One of his daughters married Josiah Geiger in 1862, and she died in May, 1863, leaving an only child, Joseph C. Geiger, for whose use the suit was brought. The real property was all sold before the death of the widow. Certain attachment proceedings were commenced against Joseph Geiger, the father, in his lifetime, he being at the commencement of such suits a non-resident of the state of Maryland. These suits resulted in judgments against him, and in judgments against the executors of the Cassell estate as garnishees. The executors paid, and sought to set up this payment for a defense to the action on the testamentary bond. The question was whether Joseph C. Geiger acquired his right to distributions sued upon, at the death of his mother, under and by virtue of the will of his grandfather, or solely through and under his mother, who died intestate. The court holds that he took under the will of his grandfather, and bases its ruling on a construction of the will, because it was clear that it was the intention that if a child died before the distribution,

the child or children of the deceased legatee were to be sub-
stituted for the parent. We will have no quarrel with either
of these cases, or with the rules established by them, but in
our judgment they do not aid in the solution of the question
we are considering.

Another case relied upon by the plaintiff in error is *Rich v.
Waters*, 22 Pick. 563. It was a question about the distribu-
tion of thirty shares in the Oxford Bank; the wife of the tes-
tator was to have the use of them, and at her death they were
to be equally divided between his heirs; the testator died,
leaving several children; the creditors of the husband of one
of the daughters of the deceased attempted by the process of
foreign attachment to subject the interest of the wife to the
payment of the husband's debts, and the court held that the
reversionary interest of any one of the children in these shares
was contingent on the death of the widow, and not liable to
attachment in the hands of the executors. In the strict legal
view there is no analogy between these cases. A testator can
always fix a time at which the residue of his personal estate,
after his debts, costs of administration, and maintenance of
widow and minor children, are provided for, shall be distrib-
uted. Besides, a reversionary interest in personal property is
not dependent upon a certain fixed thing, as a particular estate,
but is an arbitrary creation of the testator, induced by the con-
dition of his property, or his belief that certain personal prop-
erty would be a good investment, or would increase in value
within a given time, or many other such considerations.

The next case cited is that of *Sears v. Russell*, 8 Gray, 86,
in which the property was willed to trustees, to be held by
them in trust—and pay to Mary Ann during her life—and
upon the decease of the said Mary Ann to grant and transfer
the estate so devised in trust to the children of the said Mary
Ann then living, and in default of any child or issue living,
to convey the same to the heirs at law of the testator. The
gift over to his own heirs was held to be an executory devise,
and void for remoteness, as it violated the rule against per-
petuities. The property in this case was devised to trustees,

and the court say the trustees took the fee, with the superadded obligation to convey to the heirs of Mary Ann, or to the testator, as the contingency might happen. Mary Ann died, having married, leaving two infant children, one born before and one born after the death of the testator. These infants filed a bill in equity to establish their right to the property, and the court decreed that the trustees must convey them the property in fee, divested of the limitations. This is a case of an executory devise, and void because too remote. It is not an authority in the case we are considering.

In *Richardson v. Wheatland*, 7 Metc. (Mass.) 169, the devise was a life estate to the testator's daughter Hannah and her husband George during their joint and several natural lives, and at the death of both of them, to be divided among the heirs of said Hannah. At the death of the testator, Hannah and her husband George had no children living, but shortly after the death of the testator a child was born. So far as the child was concerned, this was held to be a contingent remainder during the life of Hannah, coming under the fourth head in the classification of Mr. Fearne, where the person to whom the remainder is limited is not yet ascertained, or not yet in being. We find no fault with the decision, except to say that in this state, the devise being to life tenants and their heirs, it would have to be governed by the construction that would be placed on § 52 of the chapter on wills, and this statement shows at once that the case decided is not the case at bar. The conclusion of the opinion in the case in 7 Metc. 169, is, "That the court are of opinion that the child of Mrs. Wheatland, and not her collateral heirs, was entitled to the estate; that this child has now a vested remainder expectant on the termination of the life estate of the father (the mother having died), and has the next immediate estate of inheritance." The controlling reason in this case why the remainder was contingent, was because at the death of the testator Hannah and her husband did not have any children, and hence the contingency was a doubtful and uncertain one.

In *Olney v. Hull*, 21 Pick. 311, the remainder over to the

surviving sons depends upon two contingencies. The will recites: "Should my wife marry, or die, the land shall be equally divided between my surviving sons." Her marriage was a dubious event, her death a certain one. It is much like the first case relied upon, and what we have said about it applies with equal force to this.

The case of *Reinders v. Koppelmann*, 68 Mo. 482, is a stronger case for the plaintiff in error than any yet cited. The testator gave a life estate to his wife Anna, and after her death the property then left shall be divided, one-half to go to an adopted daughter and the other half to the nearest lawful heirs of the testator and his wife Anna; and it is held that the word "heirs" has reference to those persons who would be heirs at the time of her death and not those who should be heirs-apparent at the testator's death. This construction is based upon two distinct recitals indicative of the intention. The first was that the business should be carried on with his partners, and that no part of the real estate be sold or disposed of for twenty-five years; and the second was, "the property then left shall be divided." The language used seems clearly to indicate that the heirship was confined to those living at the death of Anna. The expressions used are much stronger and more significant than the words of this devise.

The plaintiff in error then recites *White's Trustee v. White*, Ky. Ct. App., 7 S. W. Rep. 26; *Johnson v. Jacob*, 11 Bush, 646; *Evans v. Godbold*, 6 Rich. (S. C. Eq.) 26; *Hill v. Rockingham Bank*, 45 N. H. 270; *Ex parte Calmes*, 1 Hill, (S. C. Ch.) 112.

We cannot devote any more space in this opinion to our own criticism of the cases cited by the plaintiff in error. On page 595, 2 Washburn on Real Property ( 5th ed.), there is a criticism on the doctrine of the New Hampshire cases, that may apply to the case of *Hill v. Rockingham*. In a note it is said:

"In view of the prevalent disposition of the courts to hold remainders vested, rather than contingent, upon grounds of general policy, it may seem somewhat remarkable that the

courts of New Hampshire have recently adopted a principle of contingency in respect to remainders, which does not appear to have been heretofore recognized in other quarters, or even, to a casual observer, to find support in the authority on which the doctrine is said to rest.    The principle is this, that where an estate is limited to one for life, or during his natural life, and after his decease, to another, though an ascertained person then in being, there is such a possibility of the first taker committing a forfeiture of his estate, or surrendering it, or its merging in the inheritance during his life, that the remainder over is a contingent, and not a vested, one.    And this, too, while so many of the states are discarding the doctrine of contingent remainders being affected by defeating the particular estates on which they rest.    In the case referred to, of *Hall v. Nute*, 38 N. H. 422, approved of as settled law in *Hayes v. Tabor*, 41 N. H. 521, the facts were these: A devise to Esther Tuttle for life, after her death to William Tuttle, his heirs and assigns."

The court holds that "William Tuttle's attempt to release his interest in the land to E.T. conveyed nothing, and did not estop him from claiming the land after E.T.'s death, because the remainder to William was a contingent one."

Chancellor Kent, on the other hand, in illustrating by example what would be a vested remainder, says:

"A grant of an estate to A. for life, with remainder in fee to B., or to A. for life, and after his death to B. in fee, is a grant of a fixed right of immediate enjoyment in A., and a fixed right of future enjoyment in B." (4 Kent's Com. 202.)

So Mr. Butler, in his note to Fearne on Remainders, (p. 2,) says:

"If A. convey or devise to C. for life, and after C.'s decease to B. and his heirs, B.'s estate is vested in him in interest."

In *Carter v. Hunt*, 40 Barb. 89, the devise was as follows:

"I give and devise to J. M. the house and lot I now occupy, to be used and enjoyed by him during the term of his natural life; and from and immediately after his decease I give and devise the same to S., the daughter of J. M., her heirs and assigns forever."

And it was held that S. took a vested remainder.

Washburn on Real Property, 2d vol., p. 587, gives these ex-

amples: An estate might be to A. for life, with remainder in fee to B., who is a known person *in esse*, or to A. for life, with a remainder to the oldest son of B. in fee, though B. at the time of creating the estate had no son, and the remainder might be in suspense until B. died or had a son. The first of these supposed cases presents what is known as a vested remainder. The latter exemplifies what is called a contingent remainder. The broad distinction between vested and contingent remainders is this: In the first there is some person *in esse* known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can defeat. ( *Brown v. Lawrence*, 3 Cush. 390; *Leslie v. Marshall*, 31 Barb. 564; *Croxall v. Shererd*, 5 Wall. 288.) In the second it depends upon the happening of a contingent event, whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have been determined, so that the estate in remainder will never take effect.

The supreme court of the United States define a vested remainder as follows: "When a present interest passes to a certain and definite person to be enjoyed *in futuro*." (*Doe v. Considine*, 6 Wall. 474.) The possibility that the person to whom the remainder is given may die in the lifetime of the life tenant, does not make the remainder contingent, for it is certain that the remainder might take effect upon the termination of the life estate at any time. (*Kemp v. Bradford*, 61 Md. 330; *McArthur v. Scott*, 113 U. S. 430; *Weston v. Weston*, 125 Mass. 268; *Moore v. Lyons*, 25 Wend. 119; *Com. v. Hackett*, 102 Pa. St. 505.) A grant to W. for her life, and at her decease to be and become the property of her children and their legal representatives, is a present vested remainder in her children, and one of them having died in W.'s lifetime, his share went to his heirs. (*Gourley v. Woodbury*, 42 Vt. 395; *Com. v. Hackett*, 102 Pa. St. 505.) A devise to A for life, and at her death to her oldest son, if she have one: she then had a son living who was living at the testator's death;

and it was held to be a vested remainder, since the contingency only related to a state of things existing at the testator's death. (*Gardiner v. Guild*, 106 Mass. 25.) An estate is given to A for years, remainder to B for years, remainder to C for life, each of these persons being alive and having a perfect right to the land in the order named, B or C, for instance, being only postponed in the enjoyment of his estate until the preceding tenant's term shall end, they have each of them a vested remainder. And yet C may die before B's estate, or B before A's estate shall be determined, so that neither may ever in fact enjoy any benefit or estate in the land. But if the estate to C had been in fee instead of for life, though he might not have lived to enjoy it, it would descend to his heirs, who would take it in his place, or whether for fee or for life, he might have conveyed it in his lifetime by deed, and his grantees would take the same rights in respect to it that he himself possessed. (Wms. Real Property, 207.) I have given this example to show that it does not make any difference how many remainders over are limited on the same estate; so long as there are certain determinate persons who have the present capacity to take effect in possession, as it becomes vacant each of them is a vested remainder. The probabilities are that such limitations over would violate the rule against perpetuities. It may be said as a matter of strict law, in accordance with the weight of authority, that while a remainder is contingent by reason of the person who is to take it not being ascertained, it is not capable of alienation, and for this reason courts have always been inclined to construe the limitation of remainder as a vested one, if such construction can fairly be admitted. Thus: upon a devise to A. for life, remainder to the surviving children of J.S., it is obvious that in terms it is doubtful whether the surviving relates to the death of the testator, or of A. If it relates to the testator's death, and J. S. then have children, the remainder is a vested one, since there is then an ascertained person *in esse*, capable of taking the estate at any moment. (*Moore v. Lyons*, 25 Wend. 119; *Peroy v. Charleston*, 20 S. C. 71; *Chew's Appeal*, 37 Pa. St. 23; *Bailey v.*

*Hoppins,* 12 R. I. 560; *Eldridge v. Eldridge,* 9 Cush. 516; *Colby v. Duncan,* 139 Mass. 398; *Manderson v. Lukens,* 23 Pa. St. 31; *Buck v. Lantz,* 49 Md. 439.)

These citations are enough to show the general drift of judicial decisions bearing more or less on this question. The stress laid upon the word "then" in this will, and the contention of the plaintiff in error respecting it, must be more critically examined. One of the considerations urged is, that by the use of this word in the connection in which it is placed, it was the intention of the testator to limit the inheritance to only such of his heirs as were living at the death of Nancy. Another suggestion is, that during the life estate of Nancy the fee was in suspense. Another is based upon the fact that at the making of the will there was an absent son, and the uncertainty as to whether he was living or dead, induced the expressions used, so that the inheritance would remain open until the death of Nancy. While all these are included in one general rule determining the characteristics of the remainder, they may be considered as separate facts illustrating the operation of the rule. In any view they are not important or controlling, for the very good and unanswerable reason that after the life estate of Nancy Bunting was spent by her death, the property would have descended in the exact manner prescribed in the will, by the operation of the statute on descents and distributions. Under that statute the real and personal *property of the testator, at the death of Nancy, would go to* his legal heirs in the same manner, to the same extent, and in like proportions as stated in the will. So that in this case there is no necessity to resort to those refined distinctions that sometimes arise out of the attempt of testators to divert their property out of the statutory channels, in case of their death. Either under the will or by the law the same result is reached: the property goes to the legal heirs. There is not a suggestion made or a reason urged by the plaintiff in error, based upon the peculiar phraseology of this will, and the absence of his son, indicating an intention to protect the interest of the absent son, which cannot be rendered just as effectual by holding the

remainder vested, as contingent. At least fifteen years must elapse from the death of the life tenant before the absent son or his heirs would be barred of their interest in this property. If the absent son left heirs that were minors at the death of their grandmother Nancy, in 1885, probably a longer time would be required to bar their rights in the estate.

If we should hold this to be a contingent remainder, the descent, or the rule of descent, or the portion of the estate that each heir would be entitled to, would not or could not be changed. There is but one right to be affected by any decision that we could make in this case as now submitted to us, and that is the right of the plaintiff in error to recover possession of the land. If it is a contingent remainder, it is doubtful under the laws of this state whether it could have been alienated by the father of the plaintiff in error; and if not, he would recover the right to the possession of whatever interest we might determine he was vested with. If it was a vested remainder, his father conveyed it for a valuable consideration. So that we cannot escape the responsibility of declaring in express terms the character of this remainder, whether contingent or vested. If we can satisfy the words of this will by a declaration that this is a vested remainder, it is our duty to say so. If this declaration will give the direction to the transmission of this estate that it was the intention of the testator to give, the rules of construction require us to say so. There is a well-settled rule of law that a devise to an heir of the same estate in nature and quality as that to which he would be entitled by descent, is void. In such cases the heir takes by descent, and not as a purchaser. If this rule applies to the present case, then it would follow that the gift over to the heirs-at-law would fail as a remainder, so that their title would not depend upon the rules governing estates of that nature. This rule is not affected by carving out of the fee a prior particular estate; all that is necessary to the operation of the rule is, that when the estate vests in the heirs they shall hold it by the same tenure and in like manner as if the devise had never existed. (1 W. Bl. 187; Crosley's Treatise on Wills, 101; 4

Kent's Comm. 507; *Ellis v. Page,* 7 Cush. 161; *Reading v. Royston,* 1 Salk. 242; 2 Ld. Raym. 829; 6 Cruise's Dig., tit. 32, p. 8, §§ 9, 10.) The rule of construction of the word "heirs" in a will is usually construed to mean those who are such at the time of the testator's death, and that estates created by devise are to be held to be vested rather than contingent, and must give way to the controlling rule of interpretation, that the intent of the testator is to govern if it does not conflict with the rule of law. (*Richardson v. Wheatland,* 7 Metc. 179; *Olney v. Hull,* 21 Pick. 314.) And if it be found to conflict, it does not change the rule of construction. The will must fail of effect so far as it violates the rules of law, not because the intent of the testator does not control in its construction, but because the law will not permit his intent to be accomplished. (*Church v. Grant,* 3 Gray, 158; *Hall v. Priest,* 6 id. 22.) The title by descent has in such a case precedence to the title by devise. The mandate of the law-making power is higher than the will of the individual. In order to have a fixed rule of property it cannot be permitted that a grantor or testator shall prescribe a different qualification to heirs than the law prescribes when they take in the character of heirs. Neither can they be permitted to decide what shall be a descent or purchase. A man is not permitted by will to antagonize the legislative policy of the state, or to change the nature of property, or to create a perpetuity, or to create an estate commencing *in futuro,* nor should he be allowed by the use of loose and conjectural words to counteract the force and effect of the well-settled and generally-understood meaning of statutory expressions, or suspend the operation of laws, or so obscure the fee to land that the most vigilant creditor or the collecting attorney with a contingent fee cannot find it.

From these considerations it is apparent that we cannot give the word "then," as used in this will, the construction desired by the plaintiff in error. It means as used, "in that event," referring to the death of Nancy the life tenant. Neither is it material that descend means "vest," because, as the controlling desire of the testator was, according to the

theory of the plaintiff in error, to protect the interest of the absent, and as we have seen that the full measure of protection was afforded by the statute of descents and distributions, we shall not give these words a construction that will imply that from the time of the death of the testator until that of his wife, an interval of more than twenty-three years, the fee to this land was suspended, when the theory of our laws respecting real property is, that the moment the ancestor dies the fee descends to and is vested in the heirs. That construction which vests the fee in some person must prevail in every case in which the language of the conveyance and the relation of parties to the land will justify it. This rule of construction has become a dogma of the law, and grows out of the abhorrence with which the abeyance of the fee is always and everywhere regarded. Take the cases where lands are devised to heirs, but certain restrictions are placed on alienation as to the time within which they cannot sell, and the weight of modern authority is, that such restraints are of no validity. (*Oxley v. Lane*, 35 N. Y. 340; *Mandlebaum v. McDonell*, 29 Mich. 78; *Twitty v. Camp*, Phil. Eq. 61.) It is true that the fee in such cases is definitely located, and yet all these things demonstrate the policy of the law in favor of the utmost freedom to the owner of the highest interest in lands and tenements. The possibilities of the case as to the death or life of the absent son do not make the remainder contingent; if he is alive at the death of the testator, the presumption is that his mother, being the eldest, would die before he did in the usual course of natural events, and the remainder in his favor might take effect at any time upon the termination of the life estate. (*Kemp v. Bradford*, 61 Md. 330; *McArthur v. Scott*, 113 U. S. 340; *Weston v. Weston*, 125 Mass. 268; *Moore v. Lyons*, 25 Wend. 144; *Com. v. Hackett*, 102 Pa. St. 505.)

If the construction contended for is adopted, and we should hold that only such heirs of Michael Bunting as were living at the death of Nancy could take the fee, and with it the possession of the estate, the controlling intention of the testator as alleged in support of such construction would be de-

feated if a child of the absent son, born after the death of the old lady, should now make an appearance. Under the construction we give, the rights of the father would descend to and be vested in his heirs at his death. (*Moore v. Lyons*, 25 Wend. 119; *Bailey v. Hoppin*, 12 R. I. 560; *Faber v. Police*, 10 S. C. 376; *De Lassus v. Gatewood*, 71 Mo. 371.) This is true in all cases in which a remainderman is in existence at the time of the vesting. (*Stonebraker v. Zollickoffer*, 52 Md. 154.)

In case of a gift to a class such as "children," or "heirs," all of the class need not be in existence in order that the remainder may vest in any. The remainder may vest in those who are in existence, subject to open and let in those who afterward come within the class. (*In re Lechmore v. Loyd*, 18 Ch. D. 524; *Farrow v. Farrow*, 12 S. C. 168; *Stonebraker v. Zollickoffer*, supra.)

The theory of our statutes on conveyances, descent and distribution, and other subjects affecting in any manner the title to real property, is, that on the death of a person who dies seized in fee of lands, the fee descends and immediately vests in his heirs. Even equitable interests in real property are subject to levy and sale. In a word, almost every effort has been made by the legislature of this state to relieve the title to real property within our borders from all perplexing entanglements, and to produce a system whose operations are safe and natural, and easily understood by the ordinary mind. The great body of the lands but a few years ago was owned by the government. Our titles are derived principally from the operation of the homestead and preëmption acts. The process by which the title is acquired from the government is prescribed by acts of congress, expressed in plain language, and unusually free from doubtful meaning. These titles have all been acquired in less than one-third of a century; but in that time our people have become habituated to the use of a few simple, plain requirements, as to the conveyance of land and evidences of title, and we do not propose to engraft on such a system rules of construction that will cause that un-

certainty and doubt about ownership, heirship, and control of real property, that seems to be generated by the hair-splitting warmth of a discussion about vested and contingent remainders. Especially is this so when each state seems to have adopted such rules as are best suited to the condition of its people, and when a remainder would be held to be vested in one state and contingent in another, in cases in which the words used in the conveyance are identical.

It accords better with the policy of our state, with the condition of our people, and the simplicity of our titles, to hold, that in all cases, either by deed or devise, where land is granted to a person for life, with remainder to his or her heirs, or to the heirs of the grantor or devisor, and at the time the deed or devise takes effect the grantor or devisor has heirs then living, they shall be deemed to take a vested remainder in fee in all cases, except in a conveyance where the intent to create a remainder contingent on the happening of some future event is plainly expressed. This ruling is in harmony with the legislative intent, as is expressed by § 52 of the chapter on wills, and only applies the rule therein expressed to govern a devise, to the grantee and his heirs, to the grantee and the heirs of the grantor. If we do not adopt this view, then we permit a different rule of construction to be applied to the same language and like interests, in real property. In a devise to A and his heirs, the statute prescribes that A takes the life estate, and the remainder is vested in fee in his heirs. We now say that the rule shall be the same in a devise to A, with remainder to the heirs of the testator. Whether some other rule would be better, is not for us to inquire. The legislature fixed the policy by enacting the law; we follow it because it is the law and it is our duty to obey it, and because we cannot distinguish the cases and withdraw this one from its operation, and because of the importance of fixed and uniform regulations respecting real property. We hold that the will of Michael Bunting passed to his heirs living at his decease, a fixed right to the future enjoyment of the estate at the termination of the life estate of Nancy; that the father of the plaintiff in error

**3. Facts stated—vested remainder shown.** was the only legal heir of Michael Bunting at the time of Michael's death; that as such, the remainder in fee vested in him at the death of the testator; that he conveyed this interest in his lifetime; and that the plaintiff in error is not entitled to recover the possession of the land.

We are not disposed to disguise the fact that in holding this to be a vested remainder, we are not in the current of the adjudicated cases, for most of them have been governed by the rules that arose out of that excessive refinement respecting estates in remainder, that has been the cause of so much complaint; but by this ruling we add our mite to the attempt to simplify the differences, and multiply the cases in favor of vested remainders. Whether the rule we have now established in this state will make the distinction ordinarily plain and easily comprehended, and at the same time operate equitably upon all persons affected thereby, and harmonize with the general aim and definite policy of our laws respecting real property, time alone can determine.

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

HORTON, C. J., concurring.

VALENTINE, J.: The only question involved in this case is: What is the true construction or interpretation of the following words found in the last will and testament of Michael Bunting, deceased? The words are: "Then they are to descend to my legal heirs." The clause of the will in which these words are found, reads as follows:

"*Second.* I will and bequeath to my beloved wife, Nancy Bunting, after all my just debts and liabilities are paid, all the rest of my estate, real and personal, to have and hold them, together with all rights and privileges thereto belonging, during her lifetime, and *then they are to descend to my legal heirs.*"

When Michael Bunting died, of course all his interest in his land passed from him, and the title thereto necessarily went

somewhere else. (*Vining v. Willis*, 40 Kas. 609, 20 Pac. Rep. 232.)  A life estate passed to his widow; but where did the remainder go?  The remainder in fee is still to be accounted for.  The testator says in his will that it is "to descend to my legal heirs."  Who were intended by the words "my legal heirs"?  Did Michael Bunting mean by these words his then living children, who, he probably expected, would be alive when he died?—and his death was expected soon.  Or did he mean whomsoever might be his legal heirs, his children, his grandchildren, or his collateral relations, at the time of the death of his widow?  If he meant the former, then a vested remainder in fee passed to his living heirs at the time of his death; but if he meant the latter, then only a contingent remainder was created; and no one could tell at that time where the fee might eventually go.  Now contingent remainders are never favored in law; and words are never construed as creating a contingent remainder, if by any fair and reasonable construction they can be held to create some other interest or estate.  The foregoing words in the will of Michael Bunting, deceased, can fairly and reasonably be construed as creating a vested remainder in fee in his legal heirs living at the time of his death, and need not necessarily be construed as creating a contingent remainder, with the estate in fee to go no one could tell where; and therefore they ought to be construed as creating a vested remainder.

I concur in affirming the judgment of the court below.

JOHNSTON, J.: I concur in the conclusion reached, and in the judgment of affirmance.