No. 21,124.

ERWIN STEVENSON, *Appellee,* V. ARTHUR STEVENSON et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. WILL — *Construction — Life Estate—Estates in Remainder—Vested Title.* Where a testator bequeaths a life estate in his property to his widow and the remainder undivided to his sons, share and share alike, the sons acquire a vested remainder in the property, and they may sell and dispose of their undivided interests, subject to the rights of the widow under her life estate.

2. SAME. After a testator has disposed of his property by will—creating and bequeathing a life estate therein to his widow and bequeathing the remainder to his sons in undivided equal shares, a subsequent provision in the will, that if any son should die before the termination of the life estate such son's share should be paid to his descendants and should not lapse, is a mere direction in accordance with the statute of descents and distributions, and does not fairly imply that the sons may not absolutely dispose of the undivided interests vested in them by their father's will.

3. SAME. Where a life tenancy and remainders are carved out of an estate by will, and the remaindermen are *in esse,* definitely ascertained, and nothing but their death before the termination of the life tenancy can defeat their title, the remainders thus created and bestowed by the will are vested absolutely in the remaindermen.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed December 8, 1917. Affirmed.

*E. S. Rice,* and *W. S. Rice,* both of Smith Center, for the appellants.

*A. W. Relihan,* and *Ted D. Relihan,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a suit to quiet title, and it involves the construction of the will of the late Enoch Stevenson of Smith county. The will in part reads:

"Second: I give and bequeath to my beloved wife Harriet Stevenson all my property, real and personal, after paying my debts as provided in section first, for her sole use and benefit during the period of her

Stevenson v. Stevenson.

natural life, and at her death the property real and personal shall be equally divided between my three sons as follows to wit:

"To my son Albert one-third (1-3)

"To my son Arthur one-third (1-3) and

"To my son Irwin one-third (1-3), share and share alike.

"Third: In case any of my children aforesaid should die in their mother's lifetime or in my lifetime leaving issue or descendants, I direct that his share shall not lapse, but shall be paid to such descendants in equal proportions."

The plaintiff, Erwin Stevenson, is one of three sons of Enoch Stevenson. The defendant, Arthur Stevenson, is plaintiff's brother; the other defendants are the widow and children of his deceased brother, Albert.

Enoch Stevenson died in 1890. In 1893 Albert quitclaimed his undivided one-third interest in the property to the plaintiff, Erwin (Irwin), for $500, taking back a note and mortgage on the interest thus quitclaimed to secure the payment of part of that sum. The note was to mature in sixty days after the death of Harriet. About the same time, and in substantially the same way, Erwin acquired by quitclaim deed the undivided one-third interest of his brother Arthur.

Albert died in 1897. The mother, Harriet, died in 1915. Thereafter the plaintiff Erwin brought this suit to quiet title to the land described in the will, basing his title upon his one-third interest under his father's will, and upon the quitclaim deeds made to him by Albert and Arthur during their mother's life.

The pleadings of the parties set forth the pertinent facts without dispute. Demurrers were filed to defendants' answers, and judgment was entered for plaintiff.

What became of the estate of Enoch Stevenson at his death, under the terms of the will? The trial court held, in effect, that at Enoch's death a life estate in the property passed to Harriet, and that the remainder vested at once in Albert, Arthur, and Erwin; that while possession and enjoyment were deferred until their mother's death, the remainder of the fee became theirs absolutely. It cannot be discerned from the entire instrument that the testator intended to restrain his sons from parting with their several undivided interests until after their mother's death. At their father's death their interests became vested—not contingent. It is the law, and it

6—102 Kan.

Stevenson v. Stevenson.

always has been the law in this state, and in this country, and in England—notwithstanding an occasional vagrant decision to the contrary—that when nothing but the death of a remaiderman can defeat the maturity and perfection of his title, the title in remainder is vested absolutely in him. (*Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, and citations therein.) There is a loose expression sometimes used in discussing the law of contingent remainders, that such remainders are vested subject to their being divested, but to apply that expression to an ordinary vested remainder would create a new, illogical and inexact expression tending to befog an important phase of the law which has long been settled and well understood. If Albert, Arthur and Erwin had purchased their mother's life interest, can it be doubted that they would then have owned the entire fee? Or subject to their mother's life interest, could not the three sons jointly have conveyed their remainders to a stranger? And if such stranger had thereafter purchased the mother's life estate, would he not have a perfect title to the property? If Albert had acquired his mother's life estate and the remainder interests of his brothers, Arthur and Erwin, could he not then have conveyed the entire estate to a stranger and warranted it against his own heirs—his children; or could they in such case be heard to say that although all the estate had vested in their father, yet his own undivided one-third interest was vested subject to the possibility of its being divested by his own death in his mother's lifetime, and that such one-third interest automatically became theirs, or reverted to them by their father's death, notwithstanding he had conveyed to a stranger? These questions answer themselves. When title to property is once vested in definitely ascertained remaindermen, nothing can disturb it but alienation.

But it is useless to waste words on a feature of the law which has been thoroughly settled long ago.

In *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, the will read:

"Second, I will and bequeath to my beloved wife, Nancy Bunting, after all my just debts and liabilities are paid, all the rest of my estate, real and personal, to have and to hold them, together with all rights and privileges thereto belonging, during her lifetime, and then they are to descend to my legal heirs." (p. 426.)

In that case the court traced the law from its early English sources down through the American cases, and as it had been defined by the recognized standard commentators, and held that at Bunting's death his heirs took a vested remainder in his property which could be lawfully conveyed away during the life of the life tenant. When the decision in *Bunting v. Speek* was rendered, thirty years ago, the question was open in this state and the court was free to follow the general principles of the common law, as it did do (pp. 427, 432), or to adopt another view if the common law governing the subject were inconsistent with the public policy of this state. The rule announced in *Bunting v. Speek* has been recognized in the following cases: *McLaughlin v. Penney,* 65 Kan. 523, 70 Pac. 341; *Strom v. Wood,* 100 Kan. 556, 164 Pac. 1100.

The same principle was adhered to in *Holt v. Wilson,* 82 Kan. 268, 108 Pac. 87, although in that case *Bunting v. Speek* was not cited. *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998, and *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950, both involved a construction of the will of Louis Wiltberger, and it was held that the will clearly disclosed that the interests bequeathed to the testator's children were contingent upon their surviving their mother, and that if any of them did not so survive, the portion thus contingently bestowed should be bestowed upon the heirs of any such deceased child of the testator.

No such purpose is fairly disclosed in the will of Enoch Stevenson. The second clause of Stevenson's will disposes of the entire estate—a life estate to the widow and remainder in fee absolutely to the sons. The third clause of the will then undertakes to dispose of the *share* of any son who might die before the mother died. No man can dispose of another man's *share* by a will. Note the use of the word "lapse" in the third clause. Unless each son took a vested interest, there would be nothing to "lapse." Clearly the testator's direction in the third clause of the will merely indicates that he was not sure that the law would cast the interest bestowed on each son by the second clause of the will upon the heirs of any such son who might die before the termination of the life estate. As the matter stands, the third clause merely states what the law would direct if the third clause had been omitted.

It should be obvious also that even although a will might specifically provide that the testator's estate should be kept intact for a time, for example, for the duration of a life tenancy, no rule of public policy would be violated by the remaindermen by selling or disposing of their *undivided* remainder interests. The sale or barter of *undivided* interests would not affect the integrity of the estate nor frustrate any purpose of the testator.

The judgment is affirmed.

BURCH, J. (Concurring specially) :

The decision must turn on the interpretation given the will. What was the intention of the testator?

The entire estate was given to Harriet for her life, and at her death to the three sons in equal shares. The testator then dealt with certain situations which might arise, including the very one which occasioned this litigation: What if one of the sons, whose enjoyment of his share of the estate was deferred until his mother's death, should die first, leaving issue or descendants? The testator had a notion that under these circumstances the share would lapse. This was something which he did not wish to occur, so he inserted this provision in the will: "I direct that his share shall not lapse." Completing the precaution, the testator added this provision, "but shall be paid to such descendants in equal proportions."

The thing which obtruded upon the testator's attention in case a son should die before the life tenant, leaving descendants, and the thing which he took particular care to provide should not occur, was "lapse." What is it? The legal, the popular and the dictionary meanings are all the same. To lapse is to fail, to become ineffectual or void, to fail to pass from one proprietor to another, and specifically in case of a devise, to fail to take effect because of the death of the devisee. Therefore the provision of the will, "I direct that his share shall not lapse," means this: "In case a son shall die, leaving descendants, before his mother's life estate terminates, I direct that the share which I have given him shall not fail, or become ineffectual or void, or fail to take effect, because of his death." This is the very opposite of a devise of property to pass upon the happening of an uncertain and dubious event—surviving a life tenant,

Stevenson v. Stevenson.

and the very opposite of vesting an estate to be devested upon
the happening of a contingency—death before a life tenant.
On the other hand, the purpose clearly indicated was to vest
in a son dying before his mother, his share of the estate as
effectually as if death did not intervene.

There is no ambiguity in the will thus far.  There remains
to be considered the concluding provision of the third clause,
"but shall be paid to such descendants in equal proportion."
This provision, instead of overthrowing, confirms and carries
out the one preceding it, whereby the creation of vested re-
mainders was fortified.  Use of the word "paid" indicates that
technical and legal precision of language was not always at-
tained.  The testator used the word "issue," which is a term
of very general signification, and in wills frequently means
"heirs."  To help phrase his thought, the testator attached to
the general term the alternative, "or descendants," and then
used the expression, "such descendants," to indicate whoever
had been referred to.  The primary and dominant thought,
clearly and forcibly expressed, having been to prevent a devise
from failing on account of the death of the devisee, the sup-
plemental provision is more consistent with the idea of *descent*
of a vested share of the estate than with the idea of a *devise
over to descendants* of a lapsed share.  If the meaning were
less clear than it appears to me to be, the rule that a testator
must leave no doubt of his intention to create a contingent
instead of a vested remainder, might be invoked.

MASON, J. (dissenting in part): I concur in the conclusion
that the deed executed by Arthur Stevenson conveyed all his
interest in the property it described, and that upon his moth-
er's death in his lifetime the title became perfect in the grantee.
I also agree that the deed from Albert Stevenson passed
a complete title, provided the interpretation placed upon the
will by the majority of the court accords with the actual ex-
pressed intention of the testator.  And this depends upon what
he had in mind when, after having arranged that his wife
should hold the property for her life, and that it should then
go to his three sons, he added: "In case any of my children
aforesaid should die in their mother's lifetime or in my life-
time leaving issue or descendants, I direct that his share shall

not lapse but shall be paid to such descendants in equal proportions." And this in turn depends upon whether he used the words "issue" and "descendants" with accuracy, or in a loose way as synonyms for "heirs." The context makes it unlikely that when he wrote "issue or descendants" he meant "heirs." The language "in case any of my children aforesaid should die in their mother's lifetime or in my lifetime leaving issue or descendants" implies that the testator had in mind that a son might die without leaving "issue or descendants"; he could hardly have been contemplating the possibility of the death of a son without any heirs at all. The contingency he was presumably thinking of was the death of a son leaving heirs of a particular class. The phrase "issue or descendants" does not appear to be one that either a lawyer or layman would be likely to use to designate a class which included the spouse of a decedent. It seems to me that in selecting these rather unusual words the testator indicated a purpose that the property which was to go to one of his sons if he survived his mother, should otherwise pass to the son's children (if any) to the exclusion of his wife, if he left one. This was a disposition which the testator had a right to make. If he used the words "issue" and "descendants" in what appears to me to be their natural and ordinary (as well as their literal and technical) meaning, each son upon the death of his father acquired a vested interest in the property, subject to be divested by his death, leaving issue, in his mother's lifetime. Each could convey away all that he had, but no more. He had no power to defeat the provision made by the will for the benefit of his children. Therefore, the deed made by Albert Stevenson did not prevent his children taking title, upon the death of his mother, to the property which he would have received if he had survived her, their title being derived from the will and not from the law of descents and distributions, which would have required them to share it with their mother, if living. I presume there is no controversy about this, if the will indicates that the testator intended that in case Albert died before his mother the property he would otherwise have received should go to his children, to the exclusion of his wife, if she survived him. With great respect for the opinion to the con-

trary of the trial judge and of the justices comprising the majority of this court, I feel constrained to record my belief that this is what the testator meant.

JOHNSTON, C. J., and PORTER, J., concur in this partial dissent.