No. 23,935.

JAMES M. KIRKPATRICK, *Appellant*, v. ADELBERT B. KIRKPATRICK et al., *Appellees.*

SYLLABUS BY THE COURT.

1. WILLS—*Interpretation—Interests in Real Estate Contingent.* The provisions of a will considered, and *held:* Interests in real estate, depending on survival of a 30-year trust, were contingent, and not vested.

2. SAME—*Rule Against Perpetuities Violated.* A devise of real estate to trustees for thirty years, after which the contingent interests were to vest, if at all, violated the rule against perpetuities, and was void.

3. VOID DEVISE DISPOSED OF BY RESIDUARY CLAUSE—*Common-law Rule Abrogated by Statute.* The void devise fell into the residuum, and was disposed of by the residuary clause, the rule of the common law, that a lapsed or void devise goes to the heir, having been abrogated by the statute of wills.

4. PROPER PARTY TO SUE FOR INTERPRETATION OF WILL. A son of the testator, who was given a legacy of one dollar only, was qualified to sue for an interpretation of the will in respect to the matters stated.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed December 9, 1922. Affirmed.

*George R. Allen,* of Kansas City, and *A. W. Fulton,* of Chicago, Ill., for the appellant.

*E. D. McKeever, Robert Stone, George T. McDermott, Robert L. Webb,* and *Thomas Amory Lee,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to construe a will. A demurrer to the petition was sustained, and the plaintiff appeals. A copy of the will is appended to this opinion.

Kirkpatrick v. Kirkpatrick.

The plaintiff contends that the trust created by the seventh sub-division of the will is void, that the real estate forming the *corpus* of the trust estate was not disposed of by the will, and that the plaintiff succeeds to his share of it, as a son of the testator, by virtue of the statute of descents and distributions.

One ground of the demurrer was that the plaintiff lacks capacity to call upon the court to interpret the will. The argument is, the testator clearly intended to disinherit the plaintiff, intended his other children should have all his property, and it is of no concern to the plaintiff whether the trust be good or bad. The argument assumes the testator accomplished by the will his evident desire to disinherit the plaintiff and give all his property to his other children. That is what the plaintiff wants the court to pass on. It is conceded the real estate made the subject of trust is very valuable, and the plaintiff is very much interested in knowing whether the law, when applied to the will, takes the real estate out of the class, property disposed of by will, and places it in the class, property concerning which the testator died intestate. The plaintiff can gain authentic information on that subject in no way except through judicial interpretation of the will.

The defendants cite the case of *Treadwell v. Beebe,* 107 Kan. 31, 190 Pac. 768, as similar to this one, and in many respects it is. The plaintiff was an heir of the testator and a beneficiary under the will, as the plaintiff here is an heir of the testator and a beneficiary under the will, although only to the extent of a dollar. The plaintiff in the Treadwell case attacked a trust created by the will, as the plaintiff does here. The court construed the will, upheld the trust, and declared the extent to which the will provided for the plaintiff. Having done this, the court declined to go further, and tell the plaintiff the meaning of provisions in which, as the court held, she had no interest. Should the court in this case decide the trust created by the will is valid, it would not construe the trust provisions at the plaintiff's behest.

The plaintiff's main contention is that the estates coming into possession on termination of the trust did not vest at death of the testator, but were contingent; that being true, the thirty-year trust was void as violating the rule against perpetuities.

What is meant by vesting at death of the testator?

Estates are said to vest in possession, and to vest in interest. An estate vests in possession when there is an accrued, fixed and

indefeasible right to present enjoyment. An estate vests in interest when there is a present, accrued, fixed and indefeasible right to enjoyment at a future time. The subject may be illustrated by a simple instance of particular estate and remainder created by will in the following form:

I devise all my real estate to my wife, Mary, for the term of her life, and at her death to my two sons, James and John, share and share alike, in fee.

At the death of the testator, Mary takes an estate vested in possession, and James and John take estates vested in interest. Mary is entitled not only to possession, but to every privilege of ownership, extending up to the time of her death. Because her estate terminates at her death, it will not pass to her heirs, and she cannot make an effective devise of it. She may, however, lease, mortgage, and convey for life, and should she convey, her grantee may enjoy the estate while she lives. James and John have every privilege of ownership except present enjoyment. Enjoyment is postponed until termination of the life estate. There is, however, no qualification of their competency to enjoy when the life estate comes to an end. There is no uncertainty the outcome of which must be awaited, no condition to be satisfied, and no event to occur, except only the death of Mary, and that is certain to occur. Their estates accrue, and are fixed and indefeasible the moment the testator dies, the same as Mary's estate. Should one of them die intestate before Mary, his estate will pass to his heirs. Should he leave a will, his devisee will enter into enjoyment at Mary's death. He may convey before her death, and his grantee will have a fee simple absolute, vested in possession the moment she dies.

Suppose, however, the will contained a further clause like this:

Should either of my sons die before his mother, leaving a son, his share shall go to his son; should he leave no son, his share shall go to his surviving brother.

In that event, no estate would vest in interest because of uncertainty, insolvable until Mary's death, that either James or John would ever come into enjoyment. While James and John would be persons *in esse*, known and ascertained at the testator's death, the uncertainty of survivorship would make it dubious who would take at death of the life tenant. Should James die before his mother, his heirs generally would not take. His son alone would take, in case he had a son. He could not make a will, effective on the death of Mary, because, if he should not survive her, his father's will would

Kirkpatrick v. Kirkpatrick.

control. He could not make a conveyance which would surely entitle his grantee to enjoyment at Mary's death. His surviving brother, John, alone might enjoy. It comes about, therefore, that an estate vested in interest is one enjoyment of which, by a definite person, his heirs, devisees, or assigns, at termination of a precedent estate, no contingency can defeat.

The foregoing is elementary law, established by numerous decisions of this court, and stated in terms as simple as possible. Keeping it in mind, let us read the will, and see what the testator said.

The first item of the will gives to the testator's son, John E. Kirkpatrick, his daughter, Lillian M. Kirkpatrick, his daughter, Pearl I. Bair, and his son, Adelbert B. Kirkpatrick, share and share alike, all property not afterward disposed of by the will. In succeeding items specified real and personal property is given to each one of the four children named. James M. Kirkpatrick, a son, is given one dollar. He is mentioned nowhere else in the will, and so was disinherited.

The seventh item disposes of what is agreed to be the bulk of the testator's estate, consisting of real estate in the city of Topeka, in trust. The trustees are John, Adelbert, and Lillian. The beneficiaries are John, Adelbert, Lillian, and Pearl. The term of the trust is thirty years after the testator's death. The trustees have power to manage, but are forbidden to encumber or sell. The beneficiaries are to receive net income, payable monthly. Provision is made for disposition of any beneficiary's share of income in case of death, and for succession in trust.

The paragraph of item seven fixing length of trust period reads thus: "For a term of thirty (30) years after my death, at which time said property shall descend as hereinafter provided." The subsequent provision here referred to begins as follows:

"After the termination of the trust herein defined, I give and bequeath all of the real estate above described and made the subject of said trust equally, share and share alike, to my two sons John E. Kirkpatrick and Adelbert B. Kirkpatrick, and my two daughters Lillian M. Kirkpatrick and Pearl I. Bair, . . ."

Had the provision ended where the quotation ends, the words of the earlier provision, "at which time," and the words of this provision, "after termination of the trust," might be referred to time of enjoyment, and not to time of vesting of estate. So construed,

the four children would take estates vesting at death of the testator. The provision did not, however, stop as indicated. It concluded with the words, "or the survivors of such four children." Survivors at what time? Manifestly, at termination of the trust, thirty years after the testator's death. It would foist upon the will a meaning which the testator had no intention of conveying, to make the concluding clause read, "or the survivors, at my death, of such four children." Since that may not be done, it cannot be known, until thirty years have elapsed from date of the testator's death, that any one of the four children will certainly come into enjoyment of any part of the trust estate. Enjoyment depends on outliving the trust period, and the children take contingent and not vested interests. (*Purl v. Purl*, 108 Kan. 673, 197 Pac. 185.)

On page 680 of the opinion in the case just cited, the following statement of principle was approved:

Where a gift to survivors is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and those only, unless a special contrary intent is found in the will.

Further examination of the will discloses, not only absence of special contrary intent, but affirmative evidence of intent that only those children of the testator shall partake in distribution of the trust estate who survive the thirty-year period. The sentence following the one last discussed disposes of what a nonsurvivor would have taken, "if at the termination of said trust any of the four children shall have died without issue." The next sentence disposes of what a nonsurvivor would have taken, "in case any of such four children, at the time of the termination of this trust, shall have died leaving heirs." The sentence ends with the following: "Or that the share of such deceased child shall descend to his widow and children, or both, in the proportion that such child would have inherited had he or she survived."

If John E. Kirkpatrick became vested in interest in the trust property when his father died, he could convey it to-day, and, should he die to-morrow, his grantee would come into possession at the end of the thirty-year period, and would share equally with Adelbert and Lillian and Pearl, should they be alive. This would defeat express provisions of the will. If Lillian, who is unmarried, became vested in interest in the trust property when her father died, she could make a will disposing of one-fourth of the trust estate, and should she die before the end of the thirty-year period, her de-

Kirkpatrick v. Kirkpatrick.

visee would share equally with her brothers and sister, should they then be living. The will expressly defeats any such exercise of ownership. It does so because the testator disposed of what she would take if she survived the trust. Taking at all, by any one of the four children, is conditioned upon surviving the trust, and so the devise to each is contingent, and not vested.

The court does not propose to review authorities generally. The decision in the case of *Purl v. Purl*, 108 Kan. 673, 197 Pac. 185, dealt fully with the subject under consideration, and is conclusive upon the defendants. A few cases cited by the defendants will be noticed. The first one is *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288.

There is no opinion of the court in the case of *Bunting v. Speek*. A commissioner of the court filed an elaborate opinion, closing with a recommendation that the judgment of the district court be affirmed. The court, composed at that time of three members, ordered affirmance, Chief Justice Horton concurring. Justice Valentine filed a brief opinion, and concurred in the affirmance.. Justice Johnston simply concurred in the conclusion reached and the affirmance. The decision, therefore, is authority for this, and no more: A vested remainder to a testator's heirs was created by the following clause of his will:

"I will and bequeth to my beloved wife, Nancy Bunting, after all my just debts and liabilities are paid, all the rest of my estate, real and personal, to have and to hold them, together with all rights and privileges thereto belonging, during her lifetime, and then they are to descend to my legal heirs." (p. 426.)

The decision has been approved in many subsequent cases, and is the law in all cases to which it applies. Portions of the commissioner's opinion have been quoted many times, when pertaining to questions under decision, and usually have been sufficiently expressive of the thought intended to be conveyed. Some of the commissioner's statements, however, are incorrect, and others are likely to mislead. The syllabus reads as follows:

"In a devise to a wife for life, with remainder to the legal heirs of the testator, to create a contingent remainder, the intent so to do must be expressed in words so plain that there is no room for construction.

"No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." (¶¶ 1, 2.)

The decision was rendered in 1889, when courts and text writers were fond of extolling the intention of the testator as the "pole

star" of all interpretation, and then turning their backs upon it if the testator created a contingent remainder. The language of the syllabus, and of the corresponding portions of the opinion, is too strong. Likewise, the statement of Justice Valentine is too strong. The true rule is, that in case of unfeigned ambiguity in the language used in creating a remainder, a construction is favored that will make the remainder a vested one; but such a construction must give way to the intention of the testator as expressed in the will.

In the opinion in *Bunting v. Speek,* supra, it was said:

"If it is clear that certain persons then living have a right to take possession of the property at the determination of the life estate, or at any time when it becomes vacant, then the remainder is a vested one." (p. 429.)

Further on in the opinion a rule, or test, supposedly coördinate with the one just stated, is approved, to the effect that, if there is a person in being who has present capacity to take if the particular estate be presently determined, the estate is vested. This statement of the rule ignores uncertainty of event which may prevent a person from taking who, if the event were not to be awaited, would have present capacity to take. It has been productive of great confusion, and is misapplied by the present defendants.

The defendants cite the case of *Klingman v. Gilbert,* 90 Kan. 545, 135 Pac. 682. The testator gave real estate to his daughter and two sons for life, and disposed of the remainders. With respect to a son's share, the will, reduced to simplest terms, was this: Life estate to a son, remainder to his widow for life or until remarriage, remainder to heirs of his body, in fee. The question was whether the will was obnoxious to the rule against perpetuities, and the decision depended on when an estate would vest in the children of a son who died leaving a widow. The court said:

"Unless an intention to the contrary clearly appears, the members of a class in case of a gift to heirs of the testator are to be determined at his death. . . . This rule is the same when the heirs of other than the testator are referred to. 'Where the gift is to the heirs or next of kin of another than the testator it ordinarily refers to the death of such other, unless the context of the will manifests that the class shall be determined at a different time.' [Citation.] For this reason, we think that in the present case the testator must be regarded as intending that at least all children of his sons who survived their father should share in the remainder, whether or not they survived their father's widow.

. . . "Instantly upon the death of one of the testator's sons, leaving a widow, the widow would take an estate for life (or until remarriage), and the persons would be in being—namely the children of the deceased son—who

Kirkpatrick v. Kirkpatrick.

would have an immediate right to the possession of the property upon the ceasing of the widow's estate. We therefore think that the children's estate would vest at the death of their father, and the rule against perpetuities was not violated." (pp. 550, 551.)

The remainder after the daughter's life estate was disposed of as follows:

"If said daughter shall be survived by issue, her estate shall descend to such issue, but failing such issue, her estate shall descend to said sons and upon their death to the surviving widows, if any, of said sons for life or until they shall again marry and upon their death to the heirs of the body of said sons in fee simple." (p. 547.)

The only matter presented and decided with reference to this devise was that of indefinite failure of issue. The subject of vested or contingent remainder was not mentioned. The decision was correct, but sheds no light on the present controversy.

The case of *Salisbury v. Salisbury*, 92 Kan. 644, 141 Pac. 173, is cited. A trust was created by will for benefit of the testator's son Floyd; should Floyd die without issue, the fund to go to his wife for life, and then to the testator's surviving heirs; should Floyd leave issue, the trust was to continue while they lived, and then to go to the testator's surviving heirs. The question was whether the rule against perpetuities was violated. The question was not whether certain heirs of the testator would take or not, depending on survivorship of someone. The testator would have heirs surviving him, surviving Floyd, and surviving Floyd's issue. There would always be someone to take the remainder in fee. The one uncertainty was, whether heirs would succeed to the fee after a life estate to Floyd's wife, or after a life estate to Floyd's issue. Under these circumstances the question was, when the estate of the testator's heirs became vested in interest. The rule against perpetuities would be satisfied by a vesting at the time of the testator's death or at the time of Floyd's death. The rule would be violated only by a vesting at the death of Floyd's issue, if he had issue. The will was ambiguous. In one provision the term "surviving heirs" evidently meant heirs surviving Floyd. It was considered reasonable that the same expression should have the same meaning when used again, and the rule was applied that, when language is ambiguous, that interpretation will be preferred which will uphold rather than defeat the will, and which will result in early rather than remote vesting of estate. The decision has no application to the present controversy.

21—112 Kan.

The defendants cite the case of *Stevenson v. Stevenson,* 102 Kan. 80, 169 Pac. 552. The will gave a life estate to the testator's widow, and the remainder to his three sons, one-third each. Then followed this clause:

"In case any of my children aforesaid should die in their mother's lifetime or in my lifetime leaving issue or descendants, I direct that his share shall not lapse, but shall be paid to such descendants in equal proportions." (p. 81.)

Interpreting the peculiar wording of this clause, a majority of the court held the testator was not trying to make a devise over to meet a contingency, but was trying to fortify the remainders to his sons against a contingency. In the opinion it was said:

"It is the law, and it always has been the law in this state, and in this country, and in England—notwithstanding an occasional vagrant decision to the contrary—that when nothing but the death of a remainderman can defeat the maturity and perfection of his title, the title in remainder is vested absolutely in him." (p. 81.)

The defendants say that nothing but death could defeat enjoyment of the Kirkpatrick trust property by John, Adelbert, Lillian, and Pearl.

The quoted statement was derived from the commissioner's opinion in *Bunting v. Speek,* 41 Kan. 424, 21 Pac. 288, which quotes, on page 430, from the opinion in *Blanchard v. Blanchard,* 1 Allen, 227, as follows:

"Where a remainder is limited to take effect in possession, if ever, immediately on the determination of the particular estate, which estate is to determine by an event *that must unavoidably happen by the efflux of time,* the remainder vests in interest as soon as the remainderman is *in esse,* and ascertained, provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession. Yet, if the estate is limited over to another in the event of the death of the remainderman before the determination of the particular estate, his vested estate will be subject to be divested by that event; and the interest of the substituted remainderman, which was before either an executory devise or a contingent remainder, will, if he is *in esse,* and ascertained, be immediately converted into a vested remainder."

Now if a remainderman must survive the precedent estate in order to take at all, and, if he does not survive, the remainder goes to another at termination of the precedent estate, the remainder is contingent on his survival, and the opinion in the Stevenson case so indicates:

"There is a loose expression sometimes used in discussing the law of contingent remainders, that such remainders are vested subject to their being

Kirkpatrick v. Kirkpatrick.

divested, but to apply that expression to an ordinary vested remainder would create a new, illogical and inexact expression tending to befog an important phase of the law which has long been settled and well understood." (*Stevenson v. Stevenson,* 102 Kan. 80, 82, 169 Pac. 552.)

In the commissioner's opinion in *Bunting v. Speek,* it was said:

"An estate is given to A for years, remainder to B for years, remainder to C for life, each of these persons being alive and having a perfect right to the land in the order named, . . . they have each of them a vested remainder. . . . But if the estate to C had been in fee instead of for life, though he might not have lived to enjoy it, it would descend to his heirs, who would take it in his place, or whether for fee or for life, he might have conveyed it in his lifetime by deed, and his grantees would take the same rights in respect to it that he himself possessed." (*Bunting v. Speek,* 41 Kan. 424, 447, 21 Pac. 288.)

In Blackstone's classification, the second kind of contingent remainder was this:

"A remainder may also be contingent, where the person to whom it is limited is fixed and certain, but the *event* upon which it is to take effect is vague and uncertain. As, where land is given to A for life, and in case B survives him, then with remainder to B in fee; here B is a certain person, but the remainder to him is a contingent remainder, depending upon a dubious event, the uncertainty of his surviving A. During the joint lives of A and B it is contingent; and if B dies first, it never can vest in his heirs, but is forever gone; but if A dies first, the remainder to B becomes vested." (2 Blackstone's Commentaries, *170.)

As indicated in the opinion in the case of *Purl v. Purl,* supra, when the condition of surviving a life or other precedent estate is attached, the remainder is contingent; and the result is, to prevent misunderstanding and misapplication, the statement first quoted from the opinion in the Stevenson case should be expanded to something like the following: A remainder vests in interest when a person is in being and definitely ascertained who will, if he lives, and whose heirs, devisees, or grantees will, if he does not live, have an indefeasible right to enjoyment, on termination of the precedent estate.

Other cases cited by the defendants do not require comment.

Having discovered the unmistakable intention of the testator from the will itself, we are in position to apply the rule against perpetuities. The court is relieved from demonstrating the effect of such application (see *Klingman v. Gilbert,* 90 Kan. 545, 548, 135 Pac. 682), by concession of the defendants. With commendable frankness they say in their brief:

"The rule of the common law, effective in Kansas, prohibits the postpone-

ment of the *vesting* of estates for a longer period than a life in being and twenty-one years and nine months thereafter. Only contingent future estates are prohibited. The period in this case is thirty years from the testator's death. While in all human probability this is a shorter period than if he had provided for twenty-one years after the death of any of the children or grand-children in being when he died, the cases seem to say that the law will not deal in probabilities, and if, by any circumstance, the period might be longer than that permitted, it is within the prohibition. It is possible that all the testator's children and grandchildren might die within eight years and three months of the testator; if they did, the thirty years would be too long."

The trust provisions of the will being void, to whom does the trust estate go?

The first item of the will has the same effect it would have if it were placed at the end of the will, and if, substituting the word "hereinbefore" for the word "hereinafter," it read as follows:

"I give and bequeath all my personal property, and all other property of every kind and character not hereinbefore disposed of, to my son John E. Kirkpatrick, my daughter Lillian M. Kirkpatrick, my daughter Pearl I. Bair, and my son Adelbert B. Kirkpatrick, share and share alike."

Therefore, the item is a residuary clause. Does the residuary clause carry the trust property to the residuary devisees, or did the testator die intestate with reference to the trust property? If he died intestate with reference to the trust property, James M. Kirkpatrick takes a child's share, under the statute of descents and distributions. The question is one of first impression in this court.

The court knows of no better essay on the subject of liberty of testation than that of Professor McMurray, contained in Wigmore Celebration Legal Essays. A few extracts from this essay will assist in bringing into relief from its historical background the question presented for decision:

"In England the will of personality received recognition at a rather early date, possibly because of the close association of the Norman and Angevin monarchs with the clergy. In general, it may be said that the unilateral, secret, revocable will had again become an institute of European law by the twelfth century. . . .

"With the re-establishment of the conception of the will, its modern history begins. Once grasped, the conception is developed in the various lands of Europe under the influence of the most diverse social and economic forces. One of the most fundamental influences upon the medieval law of wills was that exercised by the distinction between movables and immovables, so essential in the feudal law, and even yet producing effects in our own legal system. . . .

"So early as the ninth century, we read how a man who died and then re-

turned to life, divided his belongings into three parts, one of which he sold ("sealde") to his wife, one to his children, and the third, which fell ("gelamp") to himself, he divided among the poor. This was evidently an example of the post-obit gift of the Germanic law, and modern legal historians concede that the ambulatory will was unknown before the Conquest. It was scarcely recognized and enforced by the ecclesiastical authorities before the king's courts are condemning not only the will of land but all post-obit dispositions thereof. Because the last will was usually made in *articulo mortis*, because a decedent should make some provision for his soul by bequests to the poor and to the church, the jurisdiction over wills was naturally assumed by the clergy, and by the thirteenth century they had established that monopoly in ecclesiastical courts over wills of chattels which existed until the abolition of their jurisdiction in civil matters in 1856 [1857]. On the other hand, the royal authority drew to itself exclusive jurisdiction in all cases involving the title to land. As a consequence of the early division of jurisdiction and of the struggle between the lay and the ecclesiastical authorities, nowhere in Europe do we find the distinction between the succession to lands and to chattels more firmly marked than in England. Primogeniture becomes the rule of descent of lands, division between wife and children the rule of succession in the case of chattels; the church courts recognize and encourage the testament of chattels, the king's courts absolutely forbid the will of land, save where particular customs were of such force that they must be recognized. . .

"The settlement of the rule of male primogeniture and the denial of the power of testation over lands determined much of the future history of English law. . . .

"The denial of the power of testation over land lasted long. True, the device of feoffments to uses, beginning with the twelfth century, enabled landowners to deal very freely with their lands, even extending to *post-mortem* dispositions. But it was not until 1540 that recognition was given to the will of lands, directly, though certain local customs had always preserved the institution. The abolition of uses in 1536, involving the destruction of the power of testation over land, was urged by the rebels of the north as one of their grievances against Henry VIII. The king was doubtless quite willing to concede the right to devise lands. He had just disposed of the Crown by will and inasmuch as it was then an established doctrine that the Crown devolved under the principles of the common law governing the inheritance of lands, must have been anxious to permit to his subjects the privilege which he had exercised. . . .

"For whatever reasons, the utmost freedom was given by the new statute to testators with respect to all lands held in socage tenure and two-thirds of all lands held by knight service. The subsequent abolition of knight service in 1660 made devisable all freehold lands held in estates of inheritance, other than estates tail. Copyhold lands were made devisable in 1815. Until 1837, however, the will of land retained traces of the post-obit gift. It operated only upon lands owned at the time of its execution. The Victorian Wills Act for the first time brought the English will of land nearer to the Roman by making it operate on all lands which the testator owned at the time of his death." (pp. 544-549.)

When land became devisable, the common-law courts maintained jurisdiction over the will of land, and kept wide the legal distinction between movables and immovables. The will of personalty was presented to- the ecclesiastical court, which ascertained capacity of the testator and the fact and validity of execution, admitted the will to probate, and appointed an executor. The will then, and not before, became evidence of title, and legatees took from the executor, and not from the testator. The will of real estate was not probated anywhere, but, if occasion required, was proved before juries in the common-law courts, and was offered in evidence as a muniment of title, the same as any other conveyance of real estate. If a will disposed of both land and goods, jurisdiction of the spiritual courts was confined to the disposition of personalty, and the conflict between lay and spiritual courts over such wills was one of the inducements to passage of the act of 1857, which deprived the ecclesiastical courts of their ancient authority, and created the court of probate.

Having jurisdiction to interpret the statute of wills and wills of land, the common-law courts applied to them the feudal doctrines. and particularly the doctrine of seizin. One of the most important consequences was that a testator could not make a will of land which he did not own at the date of the will. It was held the will, operating as a conveyance, spoke from its date, and did not embrace subsequently-acquired land. When a devisee of land died before the testator, the fiction was applied that the testator became repossessed. The lapsed devise took its place in the category of land acquired by the testator after date of the will, and the result was, a lapsed devise was not embraced in the conveyance. The residuary clause of a will being, like the other portions, a specific conveyance of property identified as of the date of the will, could not dispose of a lapsed devise, and it fell to the heir.

Wills of personalty having become common at a time when to die intestate was probably to die unconfessed and with uncertain hope for future welfare of the soul (3 Holdsworth History of English Law, p. 418), and jurisdiction over wills of personalty having been retained by the ecclesiastical courts, such wills were always regarded as speaking from date of the testator's death, and lapsed bequests fell into the residue and were disposed of by the residuary clause.

The foregoing sketches, in a very fragmentary way, the state of

the law at the time the English colonies were founded in America. The Victorian Wills Act of 1837, which has been referred to, contained the following sections:

"Sec. III. It shall be lawful for every person to devise, bequeath, or dispose of, by his will executed in the manner hereinafter required all real estate and all personal estate which he shall be entitled to, either at law or in equity, at the time of his death. . . .

"Sec. XXIV. And be it further enacted, that every will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect, as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will.

"Sec. XXV. And be it further enacted, that, unless a contrary intention shall appear by the will, such real estate or interest therein, as shall be comprised or intended to be comprised in any devise in such will contained, which shall fail or be void by reason of the death of the devisee in the lifetime of the testator, or by reason of such devise being contrary to law or otherwise incapable of taking effect, shall be included in the residuary devise, if any, contained in such will." (1 Vict., Cap. 26.)

In the case of *Clark v. Allaman,* 71 Kan. 206, 80 Pac. 571, the first paragraph of the syllabus reads as follows:

"From the time of their acquisition by the United States until 1868 the common law was prevalent over the separate portions of the region from which the state of Kansas was erected, under all civilized forms of governmental organization established for them; and from 1855 until 1868 the common law, not inconsistent with the constitution of the United States, the Kansas-Nebraska act, or statute law, was the rule of action and decision, any law, custom or usage to the contrary notwithstanding."

In 1868 the present law became operative, which reads as follows:

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the general statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object." (Gen. Stat., 1915, § 11829.)

The territorial legislature of 1859 passed a brief act relating to wills, sections 1 and 2 of which read as follows:

"Section 1. Any person of full age and sound mind may dispose, by will, of all his or her property, except what is sufficient to pay his or her debts, or what is allowed as a homestead, or otherwise given by law as privileged property.

"Sec. 2. Property subsequently acquired by descent or purchase, may also be devised, when the intention is clear and explicit." (Chapter CXXXI, 1859, Compiled Laws of Kansas, 1862, chapter CCXV.)

The state was admitted to the Union in 1861. The territorial

statute remained in force until 1868, when an elaborate wills act was passed. The first section reads as follows:

"Any person of full age and sound mind and memory, having an interest in real or personal property of any description whatever, may give and devise the same to any person by last will and testament lawfully executed, subject nevertheless to the rights of creditors and to the provisions of this act." (Gen. Stat. 1915, § 11752.)

The requirements relating to form, execution, revocation, probate, contest, and the like, are the same for all wills, whether of real or personal property or both, and generally wills of personalty are placed on the same footing with wills of real estate. Section 53 of the act of 1868 is still in force, and reads as follows:

"Any estate or interest in lands or personal estate or other property acquired by the testator after the making of his will, shall pass thereby in like manner as if held or possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator." (Gen. Stat. 1915, § 11809.)

In the case of *Durboraw v. Durboraw,* 67 Kan. 139, 72 Pac. 566, this section was interpreted. It was held the words "clearly and manifestly" are too vague to furnish a standard, and the statute does no more than require that the will disclose an intention that after-acquired property shall pass. In the opinion it was said a testator makes his will in contemplation of death; he understands that, until his decease, the will is ambulatory, and he may buy and sell at pleasure; but that, being written in anticipation of death, the language of the will must necessarily be referable to that event; and the rule was applied, which in this state needs no buttressing by authority, that a will must be construed to prevent intestacy with reference to any portion of the decedent's estate, if that may reasonably be done.

The statute of descents and distributions makes no distinction between devolution of real property and personal property forming distributable portions of a decedent's estate. In addition to prescribing some arbitrary formalities, the statute of wills placed some express limitations on liberty of testation, and there are some others. Aside from these limitations, it is the public policy of this state that the intention of the testator, expressed in his will, shall prevail. Indeed, the formalities referred to have for their object authentication of the testator's desires. This concern of the law for the will of a testator, duly expressed, has prevailed throughout the state's history.

Antiquity of a rule does not afford a reason for departing from it (*Ewing v. Nesbitt*, 88 Kan. 708, 129 Pac. 1131), but an ancient rule must be of social service now to command recognition, and the court is not concluded by a common-law rule unless it satisfies the conditions of the statute continuing the common law in force. (*Cooper v. Seaverns*, 81 Kan. 267, 105 Pac. 509). In this commercial age, when personal property forms so large a proportion of the wealth of the people, it would create an anachronism to include, in the law of wills, a rule founded on a distinction between movables and immovables, derived from feudal times, when the whole social organization was based on landholding in return for service. Persistence of the rule invoked by the plaintiff was due in part to antagonism between two rival systems of courts, each struggling for supremacy. In the end, ecclesiastical jurisdiction in civil affairs was abolished, but the rule of the common-law courts was abolished first. Before the colonists came to America, the rule had to be supported by fictitious and artificial reasoning, originally devised to further ends foreign to the genius of our institutions. All the great political, economic and social forces which framed and sustained the rule were spent long ago. There is no policy in this state to keep any class of property in a favored channel of inheritance as against a will, and when there is a will the presumption is against intestacy. The rule that a lapsed devise, in a will with a residuary clause, was not disposed of and went to the heir, contravened the intention of the testator, compelled him to die intestate with reference to a portion of his property when he had indicated a contrary desire, and is not in harmony with the policy underlying our law. The result is, this court could not, if called on to do so, state a satisfactory reason for making a present-day distinction between the destination of a lapsed devise and of a lapsed legacy, in a will containing a residuary clause applicable to each.

The plaintiff contends that section 53 of the wills act of 1868 (Gen. Stat. 1915, § 11809), already quoted, relating to devises of land acquired by a testator after making his will, is equivalent to section 24 of the statute of Victoria, but is not completed by an equivalent to section 25, and consequently the common-law rule is not abrogated. The court is of the opinion the difference between the two statutes consists in the method employed to remedy the same mischief, and not in extent to which the common law was modified. The British statute dealt first with the offending rule of

interpretation. A will of real estate spoke from its date. The primary consequence of the rule was, after-acquired property did not pass; a derivative consequence was, a lapsed devise went to the heir. The statute then dealt specifically with the derivative consequence. The Kansas statute dealt directly with the primary consequence of the rule of interpretation. Of necessity, the incompatible rule fell, and it no longer produces consequences in the law. Should there be some unperceived difference in the effect of the two statutes, the common-law rule, that the heir takes a lapsed devise and not the residuary legatee, has nevertheless been abrogated by the Kansas statute.

The rule of the common law was not predicated on impotency of the residuary clause of a will as such, but on the fact a man could devise only what he had when the will was made. A residuary devise was as much a specific devise as a particular devise. (*Howe v. Earl of Dartmouth*, 7 Ves. 137, 147; *Broome v. Monck*, 10 Ves. 597, 605. Normally, a lapsed devise should have passed by the residuary clause, because the property was owned both at the date of the will and at date of the testator's death; but the conveyance theory of a will was carried to its logical conclusion.

"A will, be it by the custom or statute, is still a disposition of the estate and lands he then has; but no man can bequeath lands or estate which he has not at that time; and though a will do not take effect to transfer the estate until the death of the testator, yet it is a will and disposition of his estate, even at the time of making such will; for from that time it is a will, and a disposition of what he devises away. There is no act between the making of a will and the death of the testator, necessary to be done to make this a perfect and complete will; no writing, no publishing, nor any other act whatsoever; it is subject indeed to a revocation, during the testator's life, and is to take effect only from the time of his death; but it is a will, and a disposition of the estate bequeathed from the time of the making thereof." (Holt, Chief Justice, in *Brunker v. Cook*, 11 Mod. 121, 123, Q. B., Trinity Term, 6 Anne.)

The result was that, when the devisee died before the testator, the testator reacquired what he had disposed of, in the same legal sense as if he had purchased after making his will. Under the Kansas statute, real estate acquired by the testator after making his will, passes if he so indicates. At common law, real estate embraced in a lapsed devise was, for purposes of testation, real estate acquired by the testator after making his will. The statute, aided by this doctrine of the common law, defeats the heir if there be a residuary clause in the will.

There are common-law cases making a distinction between lapsed devises and devises ineffectual or void from the beginning, and holding that a void specific devise passes by the residuary clause. The subject was examined at length by Chancellor Walworth, in the case of *Van Kleeck v. The Reformed Dutch Church*, 6 Paige Ch. (N. Y.) 600, who reached the conclusion that a void specific devise does not pass by the residuary clause, but goes to the heir.  The learned chancellor conceded that a general residuary bequest in a will of chattels would carry not only property which the testator did not attempt to dispose of otherwise, but also all .personalty which at the testator's death he had not effectually disposed of by the will; but it was said the heir at law can be disinherited only by express words or by necessary implication.  In support of the ruling, which disregarded the presumption against intestacy, the chancellor marshaled in masterly fashion the cases in which the English common-law courts had displayed their intolerance of wills of land, and their solicitude for the primogenial heir; and if the ruling be the law in this state, it is for the fundamental reason that a will of land was originally a specific appointment and disposition at date of its making.

In closing his discussion of this subject, Chancellor Kent, writing in 1830, said:

"The alteration of the law, in New York, Virginia, and those other states, making the devise operate upon all the real estate owned by the testator at his death, may produce the effect of destroying the application of some of these distinctions, and give greater consistency and harmony to the testamentary disposition of real and personal estates." (4 Kent's Commentaries, *542.)

The New York statute referred to reads as follows:

"Every will that shall be made by a testator, in express terms, of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate, which he was entitled to devise, at the time of his death." (2 Consol. Laws of N. Y. 1714.)

The statute is the substantial equivalent of section 24 of the statute of Victoria, and of section 53 of the wills act of 1868 of this state.  Chancellor Walworth's decree was affirmed by a divided court, in the case of *Van Kleeck v. Dutch Church of New York*, 20 Wend. 457, decided in 1838.  The will under consideration antedated the New York statute.  One of the senators, in delivering his opinion, referred to the statute and Chancellor Kent's observation upon it, and said:

"The provision of the statute was intended to embrace real estate acquired subsequent to the making of the will. The principle adopted is a broad one, and may operate to break up the distinction which now exists between lapsed devises and lapsed legacies. . . ." (p. 499.)

The predictions came true in the state of New York:

"Contrary to what prevailed at common law the rule in this state now is as the result of statutory enactment that a will·of real estate speaks as of the time of the testator's death and that the application of the residuary clause of a will to lapsed devises is governed by the same principles as in the case of lapsed legacies. [Citations.]

"As the result of the rejection by the Emmanuel Baptist Church of the devise in its favor that devise lapsed, either becoming by relation back void *ab initio* or never taking effect at all according to the theory adopted in the case of a rejected devise. Unless, therefore, it is covered by the residuary clause the testator has died intestate as to this real estate. It is a familiar principle that partial intestacy is to be avoided when possible and that a residuary clause of general terms ordinarily will be construed as covering lapsed or invalid legacies and devises and is not to be restricted to property not covered by specific provisions unless such intent on the part of the testator is clearly to be drawn from the remainder of the will." (*Albany Hospital v. Albany Guardian Society,* 214 N. Y. 435, 445.)

As indicated above, by virtue of the statute of this state, a lapsed devise will pass by a general residuary clause. If a devise, void when made, does not so pass, we have this situation: If a devisee die without issue the day before the will is made, the devise goes to the heir; if he die the day after the will is made, the devise goes to the residuary devisee. The court is of the opinion the statute of wills was designed to give consistency and harmony to testamentary dispositions of real and personal property, and annihilated the ultimate premises from which sophistical reasoning could deduce such incongruous conclusions.

In this instance, the intention of the testator is too clearly manifested to require discussion. The scheme of a trust to John, Adelbert, and Lillian, for the benefit of John, Adelbert, Lillian, and Pearl, who were to receive the income from land for thirty years and then receive the land, was invented purely as a restraint on alienation. There would be good ground for saying that a gift for years of the profits from land, and then of the land in fee, was a present gift of the land itself; and avoidance of the trust merely leaves the property, unfettered, with those whom the testator desired should enjoy it.

As might be expected, the legislatures and courts of the states of

Kirkpatrick v. Kirkpatrick.

the United States have dealt with the subject of lapsed and void devises in various ways. (Case note, 44 L. R. A., n. s., 789.) With great industry, counsel for the respective parties have analyzed the statutes and the decisions, in their briefs. Counsel for John E. Kirkpatrick submits the following summary, corrected to meet criticisms by counsel for plaintiff of a previous summary:

"SUMMARY.

"Every state in the Union except Texas, Arkansas, and New Mexico, has adopted section 24 of the English Wills Act in some form.

"States having adopted section 25 of the English Wills Act:

| | | |
|---|---|---|
| District of Columbia, | Rhode Island, | Oklahoma, |
| California, | Virginia, | Utah, |
| North Carolina, | North Dakota, | West Virginia. |
| Pennsylvania, | South Dakota, | |

"States holding in their decisions that a void or lapsed devise goes to the residue:

| | | |
|---|---|---|
| Maine, | Ohio, | California, |
| Missouri, | Nebraska, | North Carolina, |
| Tennessee, | Massachusetts, | Pennsylvania, |
| New Jersey, | Illinois, | Rhode Island, |
| Indiana, | New York, | Virginia, |
| Iowa, | District of Columbia, | West Virginia. |

"The first eleven states, from Maine to New York, so hold without section 25.

"States having statutory provision that a void or lapsed devise shall go to the heir: Alabama, Kentucky, and in some instances Georgia.

"States having neither section 24 nor section 25 of the English Wills Act: Arkansas, New Mexico, Texas, of which Arkansas holds void devises go to the residue and Texas seems to hold contra.

"States having section 24 of the English Act and holding that a void devise goes to the heir at law: Maryland (although the court laments it); Connecticut (although the court laments it); Mississippi (in a case decided before the Civil War)."

It is not necessary to extend this opinion by reviewing the summary. The weight of reason and authority in the United States favors the residuary devisee's title to a lapsed or void devise, in the absence of a statute preferring the heir, and without a statute equivalent to section 25 of the act of Victoria.

The judgment of this court is that the interests dependent on survival of the thirty-year trust were contingent, and not vested. The trust provisions of the will violated the rule against perpetuities, and were void. The real estate, ineffectually devised to trustees, was disposed of by the residuary clause of the will to the residuary

devisees.   James M. Kirkpatrick takes nothing by the will except the legacy of one dollar, and nothing as heir.

The judgment of the district court sustaining the demurrer to the petition is affirmed.

## LAST WILL AND TESTAMENT OF WILSON B. KIRKPATRICK.

I, Wilson B. Kirkpatrick, of Shawnee County, state of Kansas, being of sound mind and memory, do make and publish this, my last will and testament, hereby revoking all former wills heretofore by me made.

1st.  I give and bequeath all my personal property, and all other property of every kind and character not hereinafter disposed of, to my son John E. Kirkpatrick, my daughter Lillian M. Kirkpatrick, my daughter Pearl I. Bair, and my son Adelbert B. Kirkpatrick, share and share alike.

2nd.  I give and bequeath to my daughter Lillian M. Kirkpatrick all of the household goods in our home at 800 West Sixth Street, in the city of Topeka, Kansas.

· 3rd.  I give and bequeath to my son James M. Kirkpatrick, the sum of one dollar ($1.00) to be paid by my executors as soon as they have qualified.

'4th.  I give and bequeath to my son John E. Kirkpatrick, the real estate being Lots No. 201 and the north half of 203 Lincoln Street, known as street number 621 Lincoln Street, in the city of Topeka, Kansas.

5th.  I give and bequeath to my daughter, Pearl I. Bair, the real estate being Lot No. 234 Taylor Street, known as street number 716 Taylor Street, in the city· of Topeka, Kansas, with the understanding that the same shall not be disposed of or encumbered by her for fifteen years after my death.

6th.  I give and bequeath jointly to my daughter Lillian M. Kirkpatrick and my son Adelbert B. Kirkpatrick, the homestead being lots No. 74 and 76 Sixth Avenue, West, known as street number 800 West Sixth Avenue. in the city of Topeka, Kansas.  It is my desire that this property be kept in the family as the original homestead, as long as it is practicable to do so.

7th.  I give and bequeath unto my sons John E. Kirkpatrick and Adelbert B. Kirkpatrick, and my daughter Lillian M. Kirkpatrick, as trustees, in trust for my daughters Lillian M. Kirkpatrick and Pearl I. Bair, and my sons John E. Kirkpatrick and Adelbert B. Kirkpatrick, the following described real property situated in Topeka, Shawnee County, Kansas, to-wit:

Lot 103 East Sixth Avenue, known as the Sixth Avenue Hotel;  the west 50 feet of lots 211, 213 and 215 Quincy street, known as street numbers 112 and 114 East Seventh Street;  and lots 217, 219, 221, 223 and the north 15 feet of lot 225 Quincy Street, being known as street numbers 111, 113, 115, 117, 119 and 121 East Seventh Street;  which properties shall be held in trust by said trusteees for the benefit of the trust hereinafter described, for a term of thirty (30) years after my death, at which time said properties shall descend as hereinafter provided.   Said properties shall be carefully looked after and managed by said trustees, and the proceeds of the same shall be distributed as follows:

The net income divided monthly equally between the above named John E. Kirkpatrick, Adelbert B. Kirkpatrick, Pearl I. Bair, and Lillian M. Kirkpatrick, and their heirs, except heirs or children by adoption, and except as hereinafter provided.

In case of the death of my daughter Pearl I. Bair, before her son, Vernon K. Bair, reaches his fortieth birthday, I ·direct that the said Vernon K. Bair shall as long as his father Jacob K. Bair lives, receive but one-half of his mother's share of the proceeds of said properties in trust;  that my son-in-law Jacob K. Bair, as long as he lives, shall receive the other half.   After the death of the said Jacob K. Bair, if he survives his wife, the entire share of my daughter Pearl I. Bair shall be paid to her son Vernon K. Bair. until this trust terminates.   In case of the death of both Pearl I. Bair and Jacob K.

Bair before the termination of this trust, the entire share of Pearl I. Bair shall be paid to the said Vernon K. Bair, unless other children hereafter be born to said Pearl I. Bair, in which case I direct that said income should be divided equally among all of the children of my daughter Pearl I. Bair.

This trust being created for the benefit of the majority of the trustees, I direct that the said trustees be not required to give bond and that they perform said trust without compensation, except that they see that any trustee performing any unusual duty shall receive expenses incidental to the performance of said duties. Said trustees are authorized to manage said properties according to their best judgment, but shall have no power to encumber or sell said properties during the term of their trusteeship. The income from said properties shall belong to the beneficiaries of said trust absolutely, to use or invest as they see fit as their own property. Said proceeds so paid to said beneficiaries of said trust shall be the net proceeds after the payment of all taxes, charges, assessments and expenses for the upkeep and repair of said properties.

If, prior to the termination of the trust, any one of my above named children shall die not leaving any issue or children, I direct that the share of said child in said income from said real estate shall be divided equally by the trustees among the other surviving children, except adopted children, except as hereinafter provided. And by the word "issue" I mean children or grandchildren of their own blood, and not adopted children or grandchildren.

After the termination of the trust herein defined, I give and bequeath all of the real estate above described and made the subject of said trust equally, share and share alike, to my two sons John E. Kirkpatrick and Adelbert B. Kirkpatrick, and my two daughters Lillian M. Kirkpatrick and Pearl I. Bair, or the survivors of such four children. If, at the termination of said trust, any of the four children shall have died without issue, the interest of said deceased child shall descend equally to such of said four children as still survive, or their spouses or children, except adopted children. And I direct that in case any of said four children at the time of the termination of this trust shall have died leaving heirs, the interest of said child shall descend to the spouse or children of said deceased child, except adopted children, in the proportion if [that] each of said four children would receive if living, or that the share of said deceased child shall descend to his widow and children or both in the proportion that such child would have inherited had he or she survived.

It is my further will and I hereby direct that in case of the death, resignation or removal of any one of said three trustees it will not be necessary to fill such vacancy while any two are acting and qualified as said trustees. In case of the death, resignation or removal of two of said trustees, it is my will and I hereby direct that one other trustee shall be appointed and qualified so that there shall always be at least two such trustees, and such additional trustee shall be some person selected bv the unanimous approval of the beneficiaries of this trust, to wit: John E. Kirkpatrick, Adelbert B. Kirkpatrick, Lillian M. Kirkpatrick, Pearl I. Bair, and their heirs, except heirs or children by adoption.

In case of the death of my son John E. Kirkpatrick, unmarried, prior to the termination of this trust, I give and bequeath to the adopted children of my said son John E. Kirkpatrick, to wit: Kenneth Kirkpatrick and Margaret Kirkpatrick, the sum of $2,000 each, to be paid to them by the appointed trustees herein out of the proceeds of the buildings above described on East Sixth and Seventh streets and made the subject of this trust, at the rate of $50 per month until said sums shall be paid in full, and said bequests of $2,000 each to said children shall be in full of all claims of said adopted children against my estate, out of the trust fund.

I hereby designate and appoint my sons John E. Kirkpatrick, Adelbert B. Kirkpatrick, and my daughter Lillian M. Kirkpatrick as the executors of this my last will and testament, to serve without bond.

I hereby revoke all former wills by me at any time heretofore made.